(Opinion published 56 N. W. Rep. 824.)

---

MERCHANTS' NATIONAL BANK OF CROOKSTON *vs.* ROBERT STANTON *et al.*

Submitted on briefs Oct. 31, 1893. Reversed in part Nov. 13, 1893.

No. 8194.

**Buildings when not fixtures.**

Where buildings are erected by one having no interest in the land on which they stand, by the permission or license of the owner of the land, an agreement will be implied (in the absence of any other facts or circumstances tending to show a different intention) that the buildings shall remain the personal property of him who erects them.

**Same—as against a mortgagee of the land.**

Where the land is subject to a mortgage, if the agreement of the mortgagor in possession and the party erecting the building was that it should

remain the personal property of the latter, the absence of a concurrent agreement on part of the mortgagee to the same effect will not, of itself, make the building a part of the mortgage security.

**Homestead made primarily liable for a debt secured on it and other land.**

A married man and his wife executed a mortgage on their homestead and other lands, and subsequently united in a conveyance with covenants of warranty of the other lands. *Held*, that the land remaining in the mortgagors, although their homestead, became the primary fund for the payment of the mortgage.

*McArthur* v. *Martin*, 23 Minn. 74, distinguished.

Appeal by defendants Samuel L. Dobson and Nicholas Martin, from a judgment of the District Court of Polk County, *Ira B. Mills*, J., entered January 28, 1893.

The plaintiff, the Merchants' National Bank of Crookston, brought this action to foreclose a mortgage given to it on April 14, 1887, by defendants, Robert Stanton and wife, upon lot seven (7) in block twelve (12) in Fletcher & Houston's Addition to Crookston, to secure the payment to it of the note of himself and defendant Dobson of $5,050 and interest. Stanton bought the lot and took a deed of it that day from Dobson and wife. In 1888 defendant, Samuel L. Dobson, built an oatmeal mill on this lot with Stanton's consent and placed in it suitable machinery for manufacturing oatmeal. Defendant, Nicholas Martin of Chicago, Ill., furnished Dobson $5,503.33 of the money used to build and equip the mill and Dobson on March 6, 1889, gave him in good faith a chattel mortgage on the mill and machinery to secure repayment of that sum and interest and afterwards gave Martin a bill of sale of the mill and machinery.

There were two prior mortgages on this lot given by Dobson and wife, one to Loren Fletcher and Charles M. Loring September 5, 1881, for $726. This debt and mortgage were on January 2, 1892, assigned to Martin. The other to Caleb W. Palmer of Troy, N. Y., July 2, 1883, for $10,500 and interest covering this lot and also lots one (1), two (2), three (3) and four (4) in block seventeen (17) in the original town site of Crookston and a part of lot one (1) in block twelve (12) in Fletcher & Houston's Addition to Crookston and the southwest quarter and the west half of the southeast quarter of section twenty eight (28) in Township one hundred and fifty (150) north

of Range forty six (46) west. On April 26, 1884, Dobson and wife gave to Palmer another mortgage securing the same debt upon lots five (5), six (6), and seven (7) in block one (1) in Loring's Addition to Crookston. This lot seven (7) was Dobson's homestead. This debt and the two mortgages securing it were also assigned to Martin. On June 22, 1887, Dobson and wife sold and conveyed the lots in blocks twelve (12) and seventeen (17) to Francis Reckitt of London, England, with warranty. On November 21, 1890, Dobson and wife sold and conveyed the two hundred and forty acres of land to defendant William A. Cunningham, with warranty. On January 14, 1891, Dobson and wife sold and conveyed the lots in block one (1) in Loring's Addition except lot seven (7) to Grace L. Palmer, with warranty. On April 15, 1884, Palmer released from the lien of his first mortgage the part of lot one (1) in block twelve (12) in Fletcher and Houston's Addition, and on August 15, 1887, he released the lots in block seventeen (17).

The action was tried at Crookston September 6, 1892, before the Court without a jury. By stipulation of the parties the Judge inspected the oatmeal mill to enable him to determine whether it was part of the real estate and covered by the Bank's mortgage. The facts on this point are fully stated in the opinion. Findings were filed December 23, 1892, and among the conclusions of law it was found that the oatmeal mill and its machinery were part of the real estate and embraced in the lien of the mortgage to the Bank and were not subject to the lien of Martin's chattel mortgage. That the Bank was entitled to have Dobson's homestead sold on the second mortgage to Palmer to diminish the prior liens on the lot mortgaged to it and that all the mortgages should be foreclosed.

Judgment was entered accordingly. Martin and Dobson alone appealed. Martin, because his chattel mortgage was held not a lien on the mill and machinery, and Dobson, because his homestead was adjudged to be sold to reduce the Palmer mortgage on the mill lot for the advantage of the mortgage to the Bank.

*A. A. Miller*, for appellants.

Buildings erected on lands of another with the consent of the owner are frequently treated as chattels, and when a chattel has been annexed to another's freehold but may without injury to the

freehold be severed, it does not follow that it becomes a part of the freehold. *Harris* v. *Frink*, 49 N. Y. 24; *Dame* v. *Dame*, 38 N. H. 429; *Smith* v. *Benson*, 1 Hill, 176; *Morris* v. *French*, 106 Mass. 326; *Curtis* v. *Riddle*, 7 Allen, 185; *Doty* v. *Gorham*, 5 Pick. 487; *Ashmun* v. *Williams*, 8 Pick. 402; *First Parish in S.* v. *Jones*, 8 Cush. 190; *Belding* v. *Cushing*, 1 Gray, 576; *Howard* v. *Fessenden*, 14 Allen, 124.

When erected by a tenant for purposes of trade and business the agreement for separate ownership and right to remove may be implied from the circumstances of the case and the relations of the parties and usage. *Penton* v. *Robart*, 2 East, 88; *Taylor* v. *Townsend*, 8 Mass. 411; *Van Ness* v. *Pacard*, 2 Pet. 137; *Sudbury* v. *Jones*, 8 Cush. 184; *Murphy* v. *Marland*, 8 Cush. 575.

An agreement for the right of removal or that the buildings shall remain as personal property of him who erects them may be implied from the fact that they were erected by permission of the owner of the land. *Hinckley* v. *Baxter*, 13 Allen, 139; *Osgood* v. *Howard*, 6 Greenl. 452; *Pullen* v. *Bell*, 40 Me. 314.

And buildings erected for the purpose of trade or manufacture are removable without reference to their size or the material of which they are constructed. *Van Ness* v. *Pacard*, 2 Pet. 137; *Lawton* v. *Lawton*, 3 Atk. 13; *Robertson* v. *Corsett*, 39 Mich. 777; *Little* v. *Willford*, 31 Minn. 173; *Stout* v. *Stoppel*, 30 Minn. 56; *Ingalls* v. *St. Paul, M. & M. Ry. Co.*, 39 Minn. 479.

The Bank claims that it is entitled to have all the assets covered by all the mortgages marshalled and the proceeds so applied as to leave the proceeds of sale of lot seven (7) to pay its mortgage, if enough be realized from all the other security held by defendant Martin to pay him. This the appellant Dobson denies.

The general rule is that if one creditor by virtue of a lien or interest can resort to two funds and another to one of them only, the former must seek satisfaction out of that fund which the latter cannot touch. This rule must be taken with the modifications and exceptions that in its application the paramount incumbrancer shall not be delayed or inconvenienced in the collection of his debt, that the rights of third parties shall not be prejudiced and that the

parties themselves are creditors of the same debtor. 3 Pomeroy, Eq. J. § 1414; *Ex parte Rendall*, 17 Ves. 514; *Stevens* v. *Church*, 41 Conn. 369; *Dorr* v. *Shaw*, 4 Johns. Ch. 17; *Lloyd* v. *Galbraith* 32 Pa. St. 103; *Sanders* v. *Cook*, 22 Ind. 436.

A prior incumbrancer holding security upon two tracts, one a homestead, the other not, cannot be compelled by the junior incumbrancer having a lien only on the piece not a homestead, to first resort to the homestead. *McArthur* v. *Martin*, 23 Minn. 74; *McLaughlin* v. *Hart*, 46 Cal. 638; *Equitable Life Ins. Co.* v. *Gleason*, 62 Ia. 277.

*John Cromb* and *A. C. Wilkinson*, for respondent.

The defendant Martin should be required to exhaust the other securities included in the two mortgages he has bought, before the proceeds of the sale of lot seven (7), the Bank's security, is applied to the payment thereof. The defendant Dobson signed the note to the Bank with Stanton and is the original debtor in each and all of the securities involved herein. The rule contended for by defendants, that the debts must be owing from the same debtor to different creditors, is complied with. Dobson is the debtor in each case. The Bank and Martin are the creditors. As Martin has a lien upon two funds and the Bank a lien upon only one of them, the former will be compelled first to exhaust the subject of his exclusive lien, and will be permitted to resort to the other only for the deficiency. *Franklin* v. *Warden*, 9 Minn. 124; *Evertson* v. *Booth*, 19 John. 486.

The Bank has the right to have the homestead of Dobson sold and the proceeds applied in payment of Martin's mortgage thereon before selling lot seven (7), block twelve (12), mortgaged to it. This is simply enforcing an agreement made by the defendant Dobson and wife for a valid consideration that they will use the homestead property to secure the payment of that debt. *Miller* v. *McCarty*, 47 Minn. 321.

The power of a Court to compel a mortgagee to resort in the first instance to one of several estates mortgaged is exercised only for the protection of equities of different creditors or incumbrancers or of sureties, and never for the benefit of the mortgagor. The fact that the first mortgage is on exempt as well as nonexempt property, and the second mortgage on the nonexempt only, does not change the

rule, that a person having a right to resort to two funds in one of which alone another person has a junior lien shall be compelled to first exhaust the fund to which the other cannot resort. *Searle* v. *Chapman,* 121 Mass. 19; *Jones* v. *Dow,* 18 Wis. 241; *White* v. *Polleys,* 20 Wis. 503; *Chapman* v. *Lester,* 12 Kans. 592; *Plain* v. *Roth,* 107 Ill. 588; *Webster* v. *Bronston,* 5 Bush, 521; *State Savings Bank* v. *Harbin,* 18 S. C. 425; *Hallman* v. *Hallman,* 124 Pa. St. 347.

In some states it is held that as the mortgage of exempt property for a particular debt is only a waiver of the exemption as to that debt and only to the extent necessary to satisfy that debt, therefore the right of the mortgagor to his exemption, which is favored by the law, is superior to the equity of the junior creditor; and the general rule as to marshalling assets between different creditors does not apply. *Armitage* v. *Toll,* 64 Mich. 412; *McLaughlin* v. *Hart,* 46 Cal. 638; *Wilson* v. *Patton,* 87 N. C. 318.

In *McArthur* v. *Martin,* 23 Minn. 74, and *Horton* v. *Kelly,* 40 Minn. 193, this Court adopted the latter rule where the second lien has been acquired by proceedings *in invitum,* and not by the contract of the debtor.

The mill building and machinery are found by the Court to be attached to the realty and are not personal property. The Bank never agreed that Dobson might erect the mill and place the machinery therein for temporary uses, and remove the same at the end of his tenancy. It does not appear that there ever was any tenancy. The Court has found that the whole mill and machinery are a part of the realty and not subject to the chattel mortgage and bill of sale. The general rule of law in regard to fixtures is, that whatever is once annexed to the realty becomes *prima facie* a part of it and cannot be afterwards removed. The facts in the cases cited by defendants do not correspond to the facts in this case, and, therefore, the same rule of law does not apply. The Bank has the right by law and in equity to hold the land, together with all improvements placed thereon by the mortgagor for the security of its claim. The mortgagor could not remove the mill, nor can he authorize Martin to do so. *Frankland* v. *Moulton,* 5 Wis. 1; *Lynde* v. *Rowe,* 12 Allen, 100; *Hunt* v. *Bay State Iron Co.,* 97 Mass. 279; *Madigan* v. *McCarthy,* 108 Mass. 376.

Annexations made after the execution of the mortgage are subject to the same rule as those made before. *Coleman* v. *Stearns Manuf'g Co.,* 38 Mich. 30; *Burnside* v. *Twitchell,* 43 N. H. 390; *Blake* v. *Respass,* 77 N. C. 193; *Wood* v. *Whelen,* 93 Ill. 153; *Snedeker* v. *Warring,* 12 N. Y. 170; *Sweetzer* v. *Jones,* 35 Vt. 317; *Lynde* v. *Rowe,* 12 Allen, 100; *Hunt* v. *Bay State Iron Co.,* 97 Mass. 279; *Wolford* v. *Baxter,* 33 Minn. 12; *Pond Machine Tool Co.* v. *Robinson,* 38 Minn. 272; *Woodham* v. *First Nat. Bank of Crookston,* 48 Minn. 67.

MITCHELL, J.   The real issues in this case are somewhat obscured by the prolixity of the stipulated facts, (adopted by the trial court as its findings,) which contain much that was unnecessary for the determination of the case in the court below, and still more that is immaterial in the decision of any question involved in this appeal.

The primary object of this action was to foreclose a mortgage, and the principal question in the case is whether a certain building and the machinery therein, situated on the mortgaged premises, was, as between the plaintiff and defendants Dobson and Martin, the personal property of the latter, or a part of the realty, and hence covered by plaintiff's mortgage.

The short facts, so far as material to that question, are as follows:   Defendant Stanton executed to plaintiff the mortgage in suit on his own real estate to secure the joint debt of himself and defendant Dobson.   Subsequently Dobson, "with the knowledge and consent" of Stanton, erected and put on the mortgaged premises the building and machinery referred to, at his own sole expense, and mainly with money loaned to him by defendant Martin, to whom, as security for its repayment, he executed a bill of sale and chattel mortgage on the building and machinery.   The building was a large, two-story frame structure designed for "an oatmeal mill," with a one-story brick addition for an engine and boiler room, in which were placed machinery suitable to manufacture oatmeal, and an engine and boiler, pulleys and shafting, sufficient to operate the same.   This machinery was of the kind usually put in oatmeal mills, and was placed in and attached to the building in the usual way, some of it being screwed to the floor of the building, and some of it bolted to framework which was fastened to the floor, and

some of it held in position by its own weight, and all of it operated by shafting and belting, with power furnished by the engine and boiler.

There is no doubt but that such a building and machinery would, in the absence of any agreement of the parties to the contrary, become a part of the realty, and belong to the owner of the soil. *Prima facie*, all buildings belong to the owner of the land on which they stand as part of the realty. It is only by virtue of some agreement with the owner of the land that buildings can be held by another party as personal property. If erected wrongfully, or without such agreement, they become the property of the owner of the soil. But it is entirely competent for the parties to agree that they shall remain the personal property of him who erects them, and such an agreement may be either express or implied from the circumstances under which the buildings are erected. The trial court has made no direct or express finding as to whether there was any such agreement between Dobson and Stanton, and the question here is (first treating the case as if the controversy was between them) whether the facts found establish prima facie an implied agreement for separate ownership of the building and machinery. The fact that Stanton had mortgaged this property to secure a debt owing by Dobson as well as himself has no bearing upon the question in hand. That fact would not render it to Dobson's interest to expend his own money for the benefit of the land. Neither does the fact that the building was erected with money furnished to Dobson by Martin affect the question. Hence, reducing the facts found to their lowest denomination, they amount to just this: Dobson, who had no estate in the land, erected the mill at his own expense on the land of Stanton, "with the knowledge and consent" of the latter. The court did not find, and the stipulated facts do not disclose, a single other fact bearing on the question of the intention or implied agreement of the parties. The finding does, however, amount to one that the building was erected by permission and license from Stanton. At first we entertained some doubt whether this alone was sufficient to establish an implied agreement for separate ownership. Such an implication would not be drawn when a different intention of the parties is indicated by the terms of any express agreement between them on the subject, or when a different intention is

to be inferred from the interest of the party making the erections or from his relations to the title of the land.

But we have arrived at the conclusion that, where the erections are made by one having no estate in the land, and hence no interest in enhancing its value, by the permission or license of the owner, an agreement that the structures shall remain the property of the person making them will be implied, in the absence of any other facts or circumstances tending to show a different intention. This seems to us a reasonable doctrine, and one supported by the authorities, although we admit that in all the cases we have examined, including our own case of *Little* v. *Willford,* 31 Minn. 173, (17 N. W. Rep. 282,) there were always some other facts or circumstances in evidence bearing upon the question of the intention of the parties. Indeed, it would be difficult to conceive of any case where this would not be the fact if all the circumstances bearing on the question were fully in evidence. The present case comes up in the peculiar shape it does because submitted on stipulated facts probably more or less incomplete. See *Howard* v. *Fessenden,* 14 Allen, 124–128; also *Prince* v. *Case,* 2 Amer. Lead. Cas. (5th Ed.) 562.

We are therefore of opinion that the facts found establish *prima facie* an implied agreement between Dobson and Stanton for separate ownership of this building and machinery, and hence that, at least as between them, they would have remained the personal property of Dobson.

But plaintiff contends that to render it personal property as to it, it should have been a party to the agreement to that effect; and that, in the absence of any such agreement on its part, its rights must be determined by the rule which obtains between mortgagor and mortgagee, which is that all fixtures annexed to the land by the mortgagor become part of the mortgage security; and that the mortgagor could not give to a tenant or licensee a right which he himself did not possess.

Independently of any technical grounds, there are manifestly good reasons why this should be the rule as to the mortgagor himself, for, being the owner of land, and presumably looking to its redemption, it must be presumed that what he adds to it is for the benefit of his own estate, which he can always save by redeeming the premises.

It undoubtedly was formerly the rule that all fixtures annexed subsequently to the execution of the mortgage, whether annexed by the mortgagor or by his tenant or licensee under a lease or license subsequent to the mortgage, became, as to the mortgagee, a part of the realty. But this rule was founded upon the old common-law doctrine that a mortgage was a conveyance under which the mortgagee became the legal owner, and was entitled to immediate possession, the mortgagor in possession being considered strictly his tenant at will.

This is still the rule in those states—notably Massachusetts—which adhere to the doctrine that a mortgage is a conveyance. But the reasons for the rule have no application where, as in this state, a mortgage is a mere security, and neither conveys the title nor gives any right to the possession. Hence in those states where a mortgage is, as with us, a mere security, there is a general tendency to repudiate the old rule as inapplicable, and to hold that, as to fixtures placed on the mortgaged premises subsequently to the execution of the mortgage, there is no absolute presumption that they were annexed for the benefit of the realty, and that, where the intention or agreement of the mortgagor and the party making the annexation was that the thing annexed should not become part of the realty, the absence of a concurrent agreement to that effect on part of a prior mortgagee will not, of itself, make the annexation a part of the mortgage security. This would seem just, for, the annexation not having been made when he took his mortgage, he has not been misled, or advanced anything on the faith of it, and hence ought not to be permitted to avail himself of it as a part of his security, contrary to the intention of the party making the annexation. *Crippen* v. *Morrison,* 13 Mich. 23; *Davenport* v. *Shants,* 43 Vt. 546. See, also, *Tift* v. *Horton,* 53 N. Y. 380.

We are therefore of opinion that, upon the facts presented by the record, plaintiff has no better or greater right to these annexations than Stanton would have.

Certain questions arise as to the correctness of the directions of the court as to the order in which the premises covered by the several mortgages of the parties should be sold, and as to the distribution of the proceeds. As only Dobson and Martin appeal, their rights alone can be considered, and the rights of the other de-

fendants are material only so far as they bear upon the rights of the appellants. The material facts are as follows: Dobson owned three tracts of land, which, for convenience, we will call tracts A, B, and C, a part of C being his homestead.

He and his wife executed — *First* a mortgage on A; *Second*, a mortgage on both A and B; and, *Third*, a mortgage on C, (including his homestead,) as additional security for the same debt secured by the second mortgage. All of these mortgages are now held by the defendant Martin. Subsequently to the execution of these mortgages, Dobson and wife conveyed these tracts by warranty deed in the following order of time: *First*, tract A to defendant Stanton, who then executed thereon to plaintiff the mortgage now being foreclosed; *Second*, tract B to defendant Cunningham; *Third*, all of tract C, except their homestead, to defendant Palmer.

In this action the plaintiff asks for the foreclosure both of its own mortgage and of the three Martin mortgages, and that the lands covered by all of them be sold, and the proceeds applied according to rights of the several parties. If seasonably objected to, perhaps all of this could not be done in this action, but none of the defendants objected to it, and defendant Martin, in his answer, unites with plaintiff in asking that it be done.

In its judgment, the trial court, after directing that all four mortgages be foreclosed, and all the property covered thereby be sold, further directed, among other things: *First*, that all of the proceeds of the sale of tracts B and C be applied on Martin's second and third mortgages (which may be treated as one, being security for the same debt) before applying thereon any of the proceeds of tract A; *Second*, that the several lots constituting tract C be sold separately, and that the lot constituting Dobson's homestead should only be sold in case the other property covered by the second and third mortgages did not bring enough to satisfy the debt secured thereby.

The first of these directions was intended, in the interest of plaintiff's mortgage, to marshal the securities so as to require Martin to exhaust the other property covered by his mortgages before resorting to tract A, on which alone plaintiff had a lien. Defendant Martin urges that marshaling of assets or securities is only admissible between creditors of the same common debtor, to whom both

·funds or securities belong. To this general rule there are some apparent exceptions, which, however, are within its spirit. For example, it will be allowed between creditors of different persons where it appears that the debtor whose estate is sought to be charged is primarily liable, and this for the same reason that subrogation may be admitted where the two securities belong to different persons if the fund not taken be one which in equity is primarily liable. Proceeding on the same principle is the equity rule that, if the owner of mortgaged lands sells portions of them to third parties, retaining part of them himself, unless the purchasers took *cum onere*, the portion so remaining in the mortgagor becomes the primary fund for the payment of the mortgage, and the portions sold are liable in the inverse order of their alienation. This is exactly this case. Stanton could have insisted on the application of this rule, and plaintiff, his mortgagee, stands, in that regard, in his shoes.

The application of this same principle fully disposes of Dobson's contention that his homestead should not have been sold until all the other property covered by the Martin mortgages, including tract A, had been exhausted. In *McArthur* v. *Martin*, 23 Minn. 74, we held that where A. held a mortgage on two tracts of land, one of which was the homestead of the mortgagor, and B. held a judgment against him which was a lien only on the other tract, A. would not be compelled to resort to the homestead first in order to leave the other tract as far as may be to B. This was upon the ground that to apply the rule in reference to marshaling securities in favor of a judgment creditor, who obtains his lien by proceedings *in invitum*, and not by contract of his debtor, would be but an indirect method of subjecting a homestead to the payment of debts; that, under such circumstances, a judgment creditor has no equity as against the homestead right of the debtor and his family. But where, as in this case, the mortgagor and his wife have voluntarily conveyed, with covenants of warranty, a portion of the mortgaged premises, they have no equitable right to insist that their homestead shall be protected, to the displacement of the countervailing equity of their grantee that the portion of the mortgaged premises retained by them shall be the primary fund for the payment of the mortgage. In the absence of legislation or of express agreement to that effect,

the courts are not warranted in interpolating any such stipulation into the contracts of parties.

The seventh conclusion of law of the trial court is also assigned as error. Taken literally, it might seem to mean that the court directed the payment to plaintiff of the proceeds of property not covered by its mortgage. The court certainly could not have intended this, and, if the language implies that, it was doubtless an inadvertent verbal inaccuracy, which the court would, and still will, correct upon attention being called to it.

Upon the appeal of Dobson the judgment is affirmed, and upon the appeal of Martin that part of the judgment which adjudges that the mill and machinery referred to are a part of plaintiff's mortgage security, is reversed, and a new trial of that issue only is ordered.

(Opinion published 56 N. W. Rep. 821.)