[Civ. No. 2586.    Third Appellate District.—November 15, 1923.]

CITY OF VALLEJO (a Municipal Corporation), Appellant, v. EDWARD BURRILL, Respondent.

[1] LICENSES—CONSTRUCTION OF PIPE-LINE BY CITY—CONSIDERATION—REVOCATION OF LICENSE—NOTICE—NONUSER.—Where a city owning and operating its own water system enters upon private property as a licensee for consideration and, after paying such consideration, proceeds to and does expend a considerable sum of money in laying and maintaining its pipe-line through the property, the city owns and possesses an irrevocable license, or at least a license subject to revocation only upon notice with reasonable time allowed for the removal of its property; and where no notice of the revocation of such license is served upon the city by the owner of such private property, the right of the city to remove its pipe-line is not lost through mere nonuser.

[2] ID.—USE OF PIPE-LINE TO CONVEY WATER TO CITY—FIXTURES.—Where a city owning and operating its own water system lays a pipe-line through private property for the purpose of conveying water to such city, and no part of the pipe-line is installed for the purpose of use or with the intent of being used in connection with or as a part of such private property, the pipe-line does not become a fixture or a part or parcel of said private property, but remains personalty.

[3] ID.—FAILURE TO KEEP LINE IN REPAIR—NEGLIGENCE OF CITY OFFICERS — ABANDONMENT. — The city, in constructing its pipe-line through the property of defendant, having been a licensee for consideration, the negligence of its officers in failing to keep the pipe in repair in another section of its line cannot be held to be proof of abandonment of the pipe running through the premises belonging to defendant.

APPEAL from a judgment of the Superior Court of Solano County. W. A. Anderson, Judge Presiding. Reversed.

The facts are stated in the opinion of the court.

L. G. Harrier for Appellant.

Edward S. Bell for Respondent.

PLUMMER, J.—The plaintiff and appellant is a municipal corporation owning and operating its own water system.

A portion of the water system is a pipe-line running from the city of Vallejo to Green Valley, a distance of about sixteen miles. The original pipe-line was laid in 1893 and runs through the lands belonging to the defendant, but at that time owned by his father, Thomas Burrill. The defendant succeeded to his father's interest in the land referred to about the year 1900. In 1905 or 1906 a new line was constructed between Vallejo and Green Valley. This line was laid in two sections, the first section was laid between Vallejo and Creston, the second section some years later from Creston north to Green Valley. In building the second section the line was carried around and not through the lands belonging to the defendant. Use of the original line running through defendant's land was discontinued, but the pipe was not disturbed. This portion, as claimed by appellant, was left intact to be used as an extra or emergency pipe-line. In August, 1918, owing to the great demand for pipe to assist in supplying water to the navy yard for war purposes, the city decided to use the old pipe. The portion in controversy was taken up by the plaintiff, but its removal from the ranch thereafter was objected to by the defendant, hence this action for possession of the pipe or its value. The court found that the defendant was and for a period of ten years had been the owner of and entitled to the actual possession of the pipe and other materials connected therewith.

There is no dispute that the 6,000 feet of pipe-line in controversy was originally a part of the water system of the city of Vallejo and belonged to said city. It therefore follows that unless the city has parted with the ownership of said pipe-line, it still belongs to and is property to which the city is entitled. There is no evidence in the record that the city parted with its ownership of said pipe-line by either purchase or gift. The learned trial court made no findings of fact as to the manner in which the defendant became the owner of said pipe-line, but the argument of counsel and the testimony introduced show that the trial was conducted on the part of the defendant upon the theory that the plaintiff had abandoned the property in question and on the part of appellant that no such abandonment had ever taken place.

Upon the question of abandonment the testimony establishes the following facts: That since the building of the new line the city has not used any portion of the pipe-line

running through defendant's lands as a water conduit; that such portion of the pipe-line remained in an undisturbed condition until the year 1918, when it was dug up by the plaintiff; that other portions of the pipe-line, to wit, that portion between Creston and Green Valley, also remained unused but from this portion vents, turnouts, and blowcocks were removed. There is also some testimony to the effect that short portions of this section were allowed to fall into disrepair.

The point made for reversal is that the finding of the defendant's ownership is not supported by the testimony. The solution of this question depends upon the right, if any, of the plaintiff acquired in the first instance to enter upon the lands of Thomas Burrill and lay down and operate the pipe-line in controversy, and, secondly, whether there has been any abandonment of the property, such as to transfer the ownership thereof to the defendant in this action. In the recent case of *City of Vallejo* v. *Scally,* 192 Cal. 175 [219 Pac. 63], where the ownership of a portion of the same pipe-line herein referred to was in controversy, it was held that where the city has acquired a right of way by deed, mere nonuser of a pipe-line as a water conduit does not establish abandonment no matter how long continued. Are the city's rights in the premises such that the same principle should be applied in the determination of this case?

Upon the trial of the action no written grant or conveyance of the right of way from Thomas Burrill to the city of Vallejo was introduced in evidence and, so far as the record shows, none is in existence, though a witness, James B. McCauley, a city official at the time of the building of the pipe-line in controversy, stated that such an instrument had been executed. The testimony on the question of the rights acquired by the city and under and by virtue of which it entered upon the premises then belonging to Thomas Burrill as shown by the transcript is as follows:

"The City Trustee property minutes as admitted in evidence is as follows: 'Book entitled "Record of Trustees, July 6th to Dec. 16th, 1896."'"

"Minutes of the meeting of the Board of City Trustees, August 8, 1894, at page 291.

"The Board of Trustees of this city met on this date and in the place above written in adjourned session at 8 o'clock

64 Cal. App.—26

P. M., and there were present President O'Grady, Vice-President McCauley, Trustees McCudden, Fry, Browne, Deininger and Bergwall. Full Board present.

"The President stated that the object of the meeting was to hear the report of the Chief Engineer Vischer and for such other business as might properly come before it.

"The following report from Chief Vischer was then presented and read by that gentleman:

"Real Estate and Rights of Way.

   "Real Estate.

Hastings property, paid Mrs. Hastings.........$39,900.00
Advanced by John Frey......................      100.00
Madison Ranch ............................    9,318.25
John Votypka tract........................    2,500.00
John Fleming ................  ............      300.00
J. Oberti .................................    2,000.00
                                            _____
                                            $54,118.25

      "Rights of Way and Water Rights.

S. R. Gwinn ...............................      750.00
S. R. Gwinn ...............................    1,750.00
J. H. James...............................      310.00
Mrs. M. Lynch.............................      500.00
Seebe & Glasshoff ........................      850.00
C. Wilson ................................      400.00
L. Oberti ................................      500.00
Estate of Doley ..........................      400.00
A. C. Watson.............................      200.00
Thomas Burrill ...........................      500.00
Mrs. M. Scully............................      125.00
J. Fleming .........  ....  ..............      426.85
M. Lewis & A. Costa ......................      250.00
J. P. M. Phillips acc't Lewis & Costa..........   25.00
P. D. Walsh ..............................      150.00
Minor small rights of way..................       36.50
                                            _____
                                            $7,173.35

      "Interest on Deferred Payments.

Jos. Wilson ...............................       10.00
J. Oberti .................................      100.00
                                            _____
                                            $110.00

"Taxes one year on Hastings Ranch.

$151.95

J. M. Gregory, Costs of suit, Condemnation papers, etc., Daley Ranch.................. 42.30

Lumber from J. Fleming as per right of way agreement .............................. 25.35

$329.60

"Total rights of way and real estate........$61,621.20

"Vallejo, August 8, 1894.

"HUBERT VISCHER,
"Chief Engineer."

In connection with this record the witness McCauley testified as follows:

"I was a member of the Board of Trustees of the city of Vallejo at the time of the building of the original water system.

"Q. Did you obtain a right of way from Thomas Burrill? A. We did.

"Q. By Mr. Bell: Was there such an instrument in writing obtained from Mr. Burrill? A. There was.

"Q. What was paid him for that right of way? A. Well, I could not absolutely say that now; that is too long ago. I could not answer that.

"Q. Were you present at the meeting of the Board of Trustees on August 8th, 1894? A. I was.

"Q. Did you hear read the report of the Chief Engineer of the water system in which it was stated that $500 was paid to Thomas Burrill? A. I did.

"Q. What was it paid for? A. Well, I would say, of course this is 20 years or more is a long time while to say in detail what happened, and I have had no occasion to refresh my mind on the matter since, but there was no other transaction we had with Mr. Burrill except the right of way. The payment there was for the right of way; whether it covered anything else I could not say.

"I was a member of the special committee; the Board had a special water committee consisting of three members under whose supervision this work was directly carried on, and Mr. Fry and I were the active members of that committee; so that I say that all of the deeds covering the right of way were passed on by our committee before they were sub-

mitted to the Board. That is why I was so positive that all the rights of way had been covered, some of the deeds were recorded and some not. If I saw all the deeds I saw the Thomas Burrill deed. I say positively that we had all the deeds at the time and there was no occasion to change my mind since.''

The court made no finding as to the existence or nonexistence of a deed granting the right of way to the city, hence we are not at liberty to give any consideration to appellant's argument based upon the intimation of the trial court that such an instrument probably had one time existed. [1] Without deciding whether the foregoing testimony is sufficient to have justified the trial court in finding that a right of way was granted by Thomas Burrill to the city of Vallejo, we think it is nevertheless sufficient to show that the city did not enter the premises then belonging to Thomas Burrill as a trespasser, but did at least enter the premises as a licensee for consideration and after paying such consideration proceeded to and did expend a considerable sum of money in laying and maintaining its 6,000 feet of pipe, and under such circumstances the city owned and possessed an irrevocable license or at least a license subject to revocation only upon notice with reasonable time allowed for the removal of its property. As stated on page 578, 17 R. C. L., the rule in many states is:

''That where a licensee has entered under a parol license and has expended money or its equivalent in labor, it becomes irrevocable, and the licensee acquires a right of entry on the lands of the licensor for the purpose of maintaining his structures, or, in general, his rights under his license, and the license will continue for so long a time as the nature of it calls for. . . . The cases holding to this rule as to irrevocability of certain licenses proceed on two distinct theories, one theory being that when the licensee expends large sums of money in making the improvement, and such expenditure is made without opposition by the licensor, the license becomes executed and, as such, irrevocable; and that, in fact, what was at its inception a license becomes in reality a grant. The other theory and the reason most frequently given is that after the execution of the license, it would be a fraud on the licensee to permit a revocation.''

It will be observed that these cases rest upon circumstances where no consideration appears to have been paid for the license in the first instance. In *Gravelly Ford Canal Co. v. Pope & Talbot,* 36 Cal. App. 717 [178 Pac. 155], this court, speaking through Presiding Justice Chipman, declares the law as follows:

" 'A license is defined as a personal, revocable and unassignable privilege conferred either by writing or parol to do one or more acts on land without possessing any interest therein.' (17 R. C. L. 584.) A license may be implied from the acts of the parties, from their relations, and from custom, and where the owner of land, with full knowledge of the facts, tacitly permits another to · repeatedly do acts upon the land, the license may be implied from failure to object. (25 Cyc. 642.) The essential of a license that it be assented to may be shown by any acts which tend to show assent. (17 R. C. L. 572.) And the creation of a license privilege may be evidenced by acquiescence in its exercise. (Id.) A license by deed or parol, under the well-settled rule of the common law, is revocable at pleasure, unless under certain circumstances, among them, that it is executed and also unless, by reason of expenditures made by the licensee on the strength of the license it would otherwise be inequitable to permit the licensor to effect a revocation. In such case the license is irrevocable. (Id., 576, 578; *Stoner* v. *Zucker,* 148 Cal. 516 [113 Am. St. Rep. 301, 7 Ann. Cas. 704, 83 Pac. 808] ; *Miller & Lux* v. *Kern County Land Co.,* 154 Cal. 785 [99 Pac. 179].) "

The same rule was announced by the supreme court in *Stoner* v. *Zucker,* 148 Cal. 516 [113 Am. St. Rep. 301, 7 Ann. Cas. 704, 83 Pac. 808]. In *Gosliner* v. *Briones,* 187 Cal. 557 [204 Pac. 19], the supreme court having before it a somewhat similar question, uses the following language:

"Whatever the rights of a trespasser or entire stranger may be, the rule is that where structures are erected upon land by a person who occupies the land with the permission or license of the owner but who has no estate in the land, that is to say, by a mere licensee, consent on the part of the owner of the land that the structures shall remain the property of the person erecting them will be implied in the absence of any other facts or circumstances tending to show a different intention. (*Merchants' Nat. Bank* v. *Stanton,*

55 Minn. 211 [43 Am. St. Rep. 491, 56 N. W. 821]; *Fischer* v. *Johnson,* 106 Iowa, 181 [76 N. W. 658].) There is no finding that the owner of the land granted Lauff or the plaintiff express permission to occupy the land, but a direct authorization is not essential to establish an occupancy by virtue of permission or acquiescence of the owner; a license may result from circumstances as, for instance, where a person has continued in possession for such a length of time and under such circumstances that objection might well have been expected had there been no assent.''

In many cases where it is held that a license granted or presumed to exist under the circumstances which we have detailed, revocation may be had upon reasonable notice and opportunity to remove the improvements erected by a licensee. (17 R. C. L. 587.) In the case at bar the testimony fails to show that any notice of revocation was ever given by the defendant or his predecessors in interest to the plaintiff herein. If we are right in holding that the testimony referred to and set out in this opinion is sufficient to show that at least the sum of $500 was paid by the city of Vallejo to Thomas Burrill for the privilege of laying its pipe through his land, then and in that case it became also a license coupled with an interest and carried with it the right of the plaintiff to enter upon the lands and premises of the defendant and remove its pipe-line. (22 R. C. L. 81; *Clements* v. *Philadelphia Co.,* 184 Pa. St. 28 [39 L. R. A. 532, 38 Atl. 1090].) This latter case is strictly in point, as it involved the right of a Philadelphia Company to take up and remove a gas-pipe line belonging to it. That a licensee, even though his license is revocable, is entitled to reasonable notice and opportunity to remove his property is also supported by the following authorities: *Ingalls* v. *St. Paul,* 39 Minn. 479 [12 Am. St. Rep. 676, 40 N. W. 524]; *Great Falls Water Works Co.* v. *Great Northern R. Co.,* 21 Mont. 487 [54 Pac. 963]; *Shipley* v. *Fink,* 102 Md. 219 [2 L. R. A. (N. S.) 1002, 62 Atl. 360]. That such right of removal exists is also held in the case of *Gosliner* v. *Briones,* 187 Cal., at pp. 561 and 562 [204 Pac. 19]. To the same effect is *Flick* v. *Bell,* 5 Cal. Unrep. 206 [42 Pac. 813].

[2] Did the pipe-line, installed as herein related by the city of Vallejo, become a fixture and a part and parcel of the Burrill lands? We think not. It is manifest from

the testimony that the use of the pipe-line was to convey water to the city of Vallejo. No part or parcel of the pipe-line was installed for the purpose of use or with the intent of being used in connection with or as a part of the Burrill property. It was placed there, as it appears from the testimony, solely for the uses and purposes of the city. The circumstances attending the installation and use of the water-pipe in controversy bring the instant case squarely within the decision of this court in *Breyfogle* v. *Tighe et al.,* 58 Cal. App. 301 [208 Pac. 1008], where it is said that three principles or tests must be applied in determining whether personal property attached to land becomes a part of the realty—first, annexation; second, adaptation or application to the use or purpose to which that part of the realty to which it is connected is appropriated; and, third, intention. Only one of these tests respond to the circumstances under consideration, to wit, being imbedded in the soil. That it was the intention that the pipe-line should remain the property of the city, and that its uses were for the city alone, appears to be incontrovertible. Under these circumstances the right of removal exists under the authorities we have cited unless the city has in some manner parted with its title. The rule generally adopted by other authorities is set forth in 11 R. C. L. 183, as follows:

"Generally a building erected on the land of another by his consent or license does not become part of the realty, but remains the property of the person annexing it, and may be removed by him, is subject to sale and mortgage as personal property, or may be taken on execution against him. Such a building does not pass to a purchaser of the land, and if he is wronged his remedy is upon the covenants in his deed. This rule certainly holds when there is an express reservation of a right to remove the building, and generally it is considered that where the land owner consents to the placing of a building on his land by another without an expresss agreement as to whether it shall become a part of the realty or remain personalty, an agreement will be implied that it is to continue personal property."

Is there anything in the record to show that the city has parted with its title? We think not. There is no pretense of a sale or transfer of title in the ordinary method. No gift could be made by the officers of the city and the de-

fendant could only acquire title by abandonment on the part of the city if any such there be.  As heretofore stated the testimony on the subject of abandonment simply establishes nonuser of that part of the pipe-line on the defendant's premises and the taking away of faucets, vents, and blowouts referred to on other portions of the line and the allowing of other portions of the line to fall into disrepair. Our attention has not been called to any other testimony that can reasonably be said to bear upon the question of abandonment.  It must be borne in mind that there is a distinction in law between abandonment of property, such as to divest ownership or title thereto and mere neglect. Ordinarily, as said by the supreme court of this state in the case of *Board of Education* v. *Martin,* 92 Cal. 209 [28 Pac. 799], "the public is not to lose its rights through the negligence of its agents." **[3]** We do not well see how the negligence of the officers of the city of Vallejo to keep the pipe in repair in another section of its line can be held to be proof of abandonment of the pipe running through the premises belonging to the defendant.  The city itself took no official act evidencing an intention to abandon its property and if any such intention existed it can only be in-- ferred from what has heretofore been mentioned.  To sustain the theory of abandonment the defendant relies strongly upon the case of *Norton* v. *Duluth Transfer Co.,* 129 Minn. 126 [Ann. Cas. 1916E, 760, 151 N. W. 907]. Upon the subject of abandonment the court in that case says: "The intention to abandon need not appear by express declaration but may be shown by acts and conduct clearly inconsistent with the intent to continue the use of the property for the purpose for which it was acquired."

It is there stated, however, that to have the effect of divesting title the abandonment must have been more than a mere nonuser and must appear to have been an intentional relinquishment of the rights granted.  The facts in that case also show that the defendant had taken up its tracks, ties, bridges, etc., and had taken away all its property from the right of way in controversy.  The California cases cited in support of the doctrine of abandonment have reference to the giving up of possessory claims to real estate and are not pertinent to the issues herein involved.  Our attention has not been called to any testimony which would establish title

in the defendant by adverse possession or which would take this case from under the operation of the rule announced in *Thompson* v. *Pioche,* 44 Cal. 508, to wit: "To constitute an adverse possession, so as to set the statute of limitations in motion, the occupation of the one holding adversely must be open and notorious, under a claim of right, and the person against whom it is held must have knowledge, or the means of knowledge, of such occupation and claim of right."

It would seem also that title acquired by abandonment would be inconsistent with the claim of title acquired by adverse possession. The testimony of defendant upon his use of the pipe-line is as follows:

"Q. When did you talk with Chappell about this matter? A. About 1910.

"Q. Why did you go to see Chappell? A. I went to see George Savage.

"Q. Why did you go to see George Savage? A. Because I wished to use some of the pipe that was vacant or idle there at that time. . . . To get some to use as culverts across a private road, across the place there.

"Q. Then at that time you went to the city of Vallejo to ask permission to use a part of their pipe? A. Yes.

"Q. And you were taken to see Chappell? A. Yes.

"Q. What did Chappell tell you? A. He told me that they had talked that matter over quite recently, and he said 'we have concluded that the pipe does not belong to us, that the pipe belongs to the ranches in which it runs through.' And he said 'after we take the faucets and blow-offs and air valves off there and the like that way I could do what I pleased with the balance.' I know that Savage and Chappell are dead. I never talked to anybody else but those two parties.

"Q. Then you understood from Chappell's words that the city had given you that pipe? A. Yes."

That Chappell and Savage had no authority to give away the property of the city requires no citation of authority. Other than what has been stated our attention has not been called to any testimony of any acts of ownership or control of the pipe-line by the defendant save and except that the defendant was the owner and in possession of the lands and premises through which the pipe-line was laid by the city of Vallejo as hereinbefore stated. It being admitted that

the pipe-line in controversy was owned by the city of Vallejo at the time it was laid and all the testimony on the subject tending to show that the city was a licensee upon consideration, the city was entitled to reasonable notice of revocation and reasonable time to remove its property assuming that such a license is revocable. No notice of revocation was ever given. The city did not acquire its rights in the premises from use alone and therefore did not lose its rights by mere nonuser, and as there is no substantial evidence of abandonment except nonuser and no other substantial evidence of an intention to abandon, it necessarily results that the finding of the court that the defendant is the owner of the property in question is not supported by the evidence.

For the reasons given we think the judgment of the trial court should be reversed and it is so ordered.

Hart, J., and Finch, P. J., concurred.

A petition by respondent to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on January 14, 1924.

All the Justices concurred.