[Civ. No. 16665.   Second Dist., Div. Three.   June 30, 1949.]

HOWARD ROY TAYLOR, Appellant, v. DAISY M. HEYDENREICH et al., Respondents.

Warner & Moore and Caryl Warner for Appellant.

Hampton Hutton for Respondents.

WOOD, J.—Action to recover value of alleged fixtures and certain furniture which were removed by defendants from land owned by plaintiff. There was also a cause of action for damages for conversion of the alleged fixtures and the furniture, and a cause of action for rent for occupancy of the premises. The court found that defendant Mrs. Heydenreich was a licensee on the land; that the said improvements on the land, except the outhouse, were erected by Mrs. Heydenreich pursuant to said license; that the license was terminated when defendants removed the improvements from the premises; that Mrs. Heydenreich was the owner of said improvements, except the outhouse, and she was entitled to remove them from the premises. Judgment was for plaintiff for $10, the value of the outhouse and a dresser. Judgment was entered

on February 3, 1948. Plaintiff's notice of appeal states that he appeals from the order and judgment entered on February 2, 1947.

Appellant contends that the evidence does not support the judgment. Defendants Ernest H., and Daisy M., Heydenreich are husband and wife, and Ernest O. Heydenreich is their son. The plaintiff is the nephew of Mrs. Heydenreich. In 1931, Mrs. Heydenreich learned that the land in question, about 100 acres in San Diego County, was available for homesteading, and as a result of Mrs. Heydenreich's efforts her sister, Mrs. Taylor, settled on the land in 1932. Her sister abandoned the homestead, and in 1932, plaintiff settled on the land, and in 1939, he obtained title thereto. In 1934, Mrs. Heydenreich "with some help from plaintiff" constructed a one-room cabin on the premises, and later it was "expanded" into a four-room house. All the materials for the house and most of the labor for it were furnished by Mrs. Heydenreich. Plaintiff and his brother did some of the construction work. The rafters of a pergola were attached to the house by nails, and the posts of the pergola extended into a stone wall in the yard and were fastened to that wall by bolts. In 1938, a one-room cabin was built over a stone-lined cellar, and the stucco which covered the walls of the cabin "was carried down below the walls of the cabin and onto the stone foundation" or wall of the cellar. In 1940, a well was drilled, a windmill was constructed and it was anchored in concrete, and waterpipes which extended from the windmill to the house, cabin and other parts of the premises were placed about 2 feet under ground. Two chicken houses, with galvanized roofs, were built on the premises.

Mrs. Heydenreich testified that she paid all the costs for the construction of the buildings and the water system, except $15 that had been given to her by plaintiff "to go on his one-half of the cost of the well"; that a lot of material, including the galvanized roofing material, was second-hand and was brought from her house in Lennox, California; that plaintiff furnished some second-hand lumber with which the outhouse was partially constructed. She testified further that when the spring dried up she told plaintiff that she had to have a well and that she did not want to construct it unless she knew she could stay there; that plaintiff did not at that time have any money to contribute toward construction of the well and, in reply to her statement, said: "You can stay here as long as you live and that he would never put her off"; that when

plaintiff married (in 1942) his attitude changed, and she requested him "to put something in writing" and give her a deed to the property; that she never agreed to pay rent for the property, but she served as caretaker of the property and protected it from thieves and fire; that she had always treated plaintiff as her son and nursed him when he was sick and fed him when he was grown, and that she felt it was proper that she should have a few acres (3 acres) which she requested that he deed to her; that when he refused to do so, she did the only thing she could do to protect herself and she removed the buildings (to land of Mr. and Mrs. Heydenreich which is about 5 miles from plaintiff's land); that she always considered the buildings as her own; that she never had an understanding with plaintiff that she should get a part of the homestead—such an understanding would be unlawful, but she felt that by reason of all she had done for plaintiff he should have treated her better.

Plaintiff testified that the property which was removed from the premises exceeded $4,000 in value; that until he married in 1942 he never objected to defendants' residing on the property; that at that time Mrs. Heydenreich requested him "to deed a portion of his land," but he refused to do it; that at times after 1942 he told defendants to pay rent or vacate the premises. On June 27, 1946, plaintiff demanded that defendants pay $3,000 as rent, being $50 per month for the past 60 months. On July 19, 1946, plaintiff gave defendants a written notice to pay $600 rent or quit possession of the premises. About July 26, 1946, defendants removed the buildings, windmill, waterpipes, and a dresser from the premises to land owned by Mr. and Mrs. Heydenreich. Plaintiff, who resided in Los Angeles, also testified that he did not know about the removal of the improvements until he visited the place the first part of August, 1946; that the "standards" at the corners of the windmill had been sawed off about 12 inches above the ground; that the well was full of rocks; and that he did not give anyone permission to remove the improvements.

Six witnesses, including Mrs. Heydenreich, testified that the house was "sitting on large boulders, but not put together with concrete."

A witness called by plaintiff said that he heard Mr. Heydenreich say that he was going to throw rocks into the well. Mr. Heydenreich testified that he never threatened to put rocks in

the well, that he did not put rocks in it or damage it in any way.

In 1943, Mrs. Heydenreich wrote two letters to plaintiff wherein she sought to adjust their respective claims to the property involved here. In one of those letters, written in January, 1943, she said in part: "I am asking you for the last time to come thru in some way so I can stay here. . . . What about this proposition? We were supposed to go 50-50 on this but you don't want to do your part so now if you will sell me your house reasonable and give me the land just beyond the well you can have the rest and have the good home-site. We want to stay friends with you . . . and hope you consider I have earned this much consideration." In the other letter, written in November, 1943, she said in part: "I am still waiting for your answer. . . . This is my last offer, so if you would rather let people tear up & carry off your house than be square I guess it will be your wish. I still say you owe me more than what I am asking. I asked you to let me know at once and now I must know while I can get help—Why you do this expensive thing to Ernie & I we do not know." In explanation of the first letter, she testified that by the words "We were supposed to go 50-50" she referred to her deal with plaintiff about drilling the well and about the installation of the water system, and did not refer to the homestead. In explanation of the second letter, she testified that by the words "rather let people tear up & carry off your house than be square" she meant that she would have to move from the premises and vandals would tear up and carry off the house.

■ Whether an article is a fixture is a question of fact to be determined upon the evidence in the particular case, and the question is determined not only by the manner in which the article is annexed to the realty but also by the relationship between the parties. (*R. Barcroft & Sons Co.* v. *Cullen*, 217 Cal. 708, 711 [20 P.2d 665].) ■ The evidence was sufficient to support the finding that Mrs. Heydenreich was a licensee on the premises, and that the improvements (except the outhouse) were erected pursuant to the license. Mrs. Heydenreich and plaintiff were aunt and nephew. A very friendly relationship existed between them when she went to reside upon the land and when the improvements were made. She had been of much assistance to him—she had taken care of him when he was sick, had provided him with food, and had obtained the information that the land was

available for homesteading. She went upon the land with his permission, remained there several years with his per-mission, and there is no evidence that it was contemplated that she should pay rent. She paid no rent. He told her that she could stay there as long as she lived. The materials used for said improvements were furnished by her, and she paid all the construction costs, except $15 which was paid by plain-tiff as a part of his one-half of the cost of the well. Some of the construction work was done by plaintiff and his brother. The improvements were of the value of $4,000, according to plaintiff. Under the circumstances here, where she was upon the land by mere permission of the owner and was subject to ouster at any time, it is not reasonable to infer that she intended, or that plaintiff intended, that such valuable im-provements, placed upon the land by her at her own expense, should become a part of the real property of plaintiff.

Where structures are erected upon land by a mere licensee, consent on the part of the owner of the land that the structures shall remain the property of the licensee will be implied in the absence of evidence showing a different inten-tion. (*Gosliner* v. *Briones,* 187 Cal. 557, 561 [204 P. 19] ; *City of Vallejo* v. *Burrill,* 64 Cal.App. 399, 407 [221 P. 676].) Appellant's contention that the evidence does not support the judgment is not sustained.

Appellant also contends that the court erred in sus-taining defendants' objection to his question as to whether the improvements were the same type as other improvements in the area. The offered evidence was material upon the issue as to whether it was intended that the improvements should become fixtures, but the ruling was not prejudicially errone-ous in view of the determination that the relationship of the parties was that of licensor and licensee.

Appellant also asserts that the court erred in over-ruling his objection to a question as to whether Mrs. Heyden-reich had paid the expenses involved in making the improve-ments. The ruling was correct. The evidence was material upon the issue of intent. Also, if the improvements were not fixtures, it was material to know whether Mrs. Heydenreich or the plaintiff had paid for them.

Appellant asserts that the findings were conflicting. It appears from the original judgment in the office of the county clerk that the findings were prepared by counsel for appellant. He refers to a finding ''that certain of said

improvements were constructed by the parties with the intention that they would be permanently affixed to the realty and for the mutual benefit of both parties, and not thus constructed with the idea that the improvements would remain a permanent part of the property after the licensee Daisy M. Heydenreich left the property, but only so long as the licensee should remain on the premises.'' The finding was not prejudicially conflicting. The court also found, as hereinabove stated, that Mrs. Heydenreich was a licensee on the premises, and that the improvements were erected by her pursuant to said license. When all the findings are considered together it is apparent that the court found that the parties intended that said improvements should be ''permanently'' affixed to the realty for their mutual benefit ''only so long as the licensee Mrs. Heydenreich should remain on the premises,'' and the improvements were not constructed with the intention that they should remain a permanent part of the property after the licensee Mrs. Heydenreich left the property; and that she was the owner of said improvements and was entitled to remove them. There is a notation, by the county clerk, on the judgment herein, as follows: ''Judgment ordered Satisfied, by Court Order dated May 3, 1948.'' By reason of the above conclusions, it is not necessary to discuss the significance of the satisfaction of the judgment.

The judgment is affirmed.

Shinn, P. J., and Vallée, J., concurred.