[Civil No. 2818. Filed April 4, 1929.]

[276 Pac. 4.]

BERRYHILL OFFICE EQUIPMENT COMPANY, a Corporation, WALLACE C. BUTTON, and W. W. WHITE, Appellants, v. S. K. PHILLIPS, J. T. BONE and A. G. AUSTIN, Composing the Board of Supervisors of Maricopa County, State of Arizona, JOHN B. WHITE, Clerk of the Board of Supervisors of Maricopa County, State of Arizona, MARICOPA COUNTY, a Corporation, and EDWARD F. NEILD, Appellees.

See Counties, 15 C. J., sec. 243, p. 549, n. 1, sec. 244, p. 550, n. 9, sec. 358, p. 645, n. 35.

Mr. Earl F. Drake, for Appellants.

Mr. Henry J. Sullivan and Mr. I. J. Lipsohn, for Appellees.

ROSS, J.—This is a taxpayers' suit to enjoin the letting of a contract for furniture for the county courthouse and jail of Maricopa county, brought by Berryhill Office Equipment Company, Wallace C. Button and W. W. White against the members and clerk of the board of supervisors of said county, the county, and Edward F. Neild, architect and superintendent of construction of said building and equipment. A general demurrer to the complaint was sustained, followed by a judgment of dismissal. Plaintiffs have appealed from the judgment, and assign the order sustaining the demurrer as error.

Does the complaint state a cause of action? It would occupy too much space, if set out in full. Some of the facts (and their necessary intendments) stated

in the complaint as a reason why the injunction should issue will be given, not in the language of the pleader, but in substance.

It is averred that Maricopa county had voted a bond issue of $750,000 to construct and equip a county courthouse and county jail; that the board of supervisors, at the time of filing suit, were advertising a notice of a call for sealed bids, to be opened at 2 P. M., Monday, December 24, 1928, for the purchase of wood and metal furniture, electric light fixtures, and floor coverings for the county courthouse and jail; that said call for bids was issued by the board on November 8th, 1928; that it was published the first time in the official county newspaper on November 13th, 1928; that, although the call as issued and as published stated that the plans and specifications for said equipment were on file with the board of supervisors and might be seen by prospective bidders, such plans and specifications were not completed until November 26th, and were not filed with the board until November 27th, 1928; that the plaintiff Berryhill Office Equipment Company was desirous of bidding for the contract to furnish the steel and woodwork furnishings and equipment called for by said notice, and made frequent visits between November 19th and 26th to the office of the board of supervisors in an attempt to inspect the plans and specifications, only to be informed by the clerk of the board and others employed in said office that said plans and specifications were not on file and not available for inspection, because they had not been received from the architect; that on November 23d, in response to a telegraphic request dated November 19th, Edward F. Neild, architect, residing in Shrevesport, Louisiana, sent the Berryhill Company a copy of the plans and specifications, which were received by it in Phoenix November 27th.

It is alleged on information and belief that responsible bidders were prevented from bidding for such contracts because of the inadequacy of time to prepare models and designs as called for in the notice for bids, to wit: From November 27th, 1928, the date of filing plans and specifications with the board, until December 24th, the date fixed for opening bids. The plaintiffs complain that the notice for bids was illegal and insufficient, in that, according to the plans and specifications, each bidder was required to bid a specific sum, no less and no more, "for the metal furniture and equipment," and "for the wood furniture, fixtures, Venetian blinds, linoleum, floor covering, and all the material and equipment"; said requirements being in the following words:

"The owner (county) has set aside for the metal furniture and equipment, and all other material and equipment covered by this specification and schedule the sum of forty-seven thousand five hundred dollars ($47,500.00), and each bidder is required to bid this amount. No bids for a greater or lesser amount will be considered. Each bidder is expected to show the highest quality possible for this sum, and the award will be made on this basis."

"The owner has set aside for the wood furniture, fixtures, Venetian blinds, linoleum, floor covering, and all the material and equipment covered by this specification and schedule the sum of eighty-three thousand five hundred dollars ($83,500.00), and each bidder is required to bid this amount. No bids for a greater or lesser amount will be considered. Each bidder is expected to show the highest quality possible for this sum and the award will be made on this basis."

That said requirements violated the governing statute (par. 5282, Civ. Code 1913), which provides that the contract for furnishing said buildings shall be let to the lowest and best responsible bidder.

It is alleged that the Berryhill Office Equipment Company, on or about the fifteenth day of December,

received through the mails from the architect, and upon information and belief that other prospective bidders also received through the mails from said architect, certain addenda to the plans and specifications, providing, among other things, that "each bidder at his option may submit proposal for amount less than the maximum amount stipulated if the equipment which he proposes to furnish complies with the specifications, it being understood that in the award of this contract, the quality of the products will be considered as well as the cost."

It is alleged upon information and belief that said addenda was made and prepared by the architect and had never been approved or adopted by the board of supervisors; that, at all events, it was too late because, the plans and specifications having been previously filed and advertised, such modification, or attempted alteration, whether made by the architect or the board, was illegal.

The following provisions are also set out in the complaint, with the allegation that they are unreasonable and tend to stifle competition, to wit:

"Bidders will submit with their proposals a list of not less than three similar buildings they have furnished."

"Bidders' attention is called to the fact that this is a monumental building, and the owner desires the furniture equipment to be as good as the building; therefore, better workmanship, better finish, more refined ornamentation, and higher grades of upholstering than the regular type of stock furniture and equipment are desired."

"While it is the desire of the owner to encourage the freest competition, it is recognized that the furniture for the building must harmonize with the building, not only in design, but in materials, construction and finish. Therefore the ordinary stock or commercial grade of furniture will not give the harmony or durability desired. The specifications have been

drawn with a view of requiring the successful contractor to build the furniture to order and to use the best possible quality of materials and best known methods of construction.''

''With each proposal submitted it is required that a list of the subcontractors who may be employed be submitted for approval or disapproval of the board of supervisors.''

In considering the ruling of the court on the demurrer, we must treat all material allegations of the complaint as true. If, when so treated, no cause of action is stated, it was the duty of the court to sustain the demurrer.

With reference to the publishing of notice for bids, if the law requires the adoption of plans and specifications of the proposed undertaking, and that such plans and specifications be available for inspection by prospective bidders during the period of publication of notice, then we think the complaint states a cause of action. That the plans and specifications were not on file with the board of supervisors on the first day of the publication, to wit, November 13th, or any succeeding date until November 27th, is quite sufficiently stated as against a general demurrer.

The pertinent part of paragraph 5282 of the Civil Code reads as follows:

''If any bonds or other evidences of indebtedness shall be issued and sold by any county, . . . under the provisions of this chapter, for the purpose of erecting and furnishing any public building within such county, . . . the board of supervisors, in the event such public building shall be erected and furnished by the county, . . . shall . . . adopt plans and specifications for such building, and said board of supervisors, . . . shall, as soon as may be practicable after the adoption of such plans and specifications, advertise for bids for the erection and furnishing of said building.

"The notice of advertisement for such bids shall set a day and hour, not less than forty days from the date of such notice, when said bids shall be received and opened, and said board of supervisors . . . shall award the contract for the erection and furnishing, or the erection or furnishing of said building to the lowest and best responsible bidder, provided that any and all bids so submitted may be rejected."

While this statute does not specifically require the adoption of plans and specifications for courthouse and jail equipment, it does require advertised notice for bids on such equipment, setting a day and hour, not less than forty days from the date of such notice, when such bids shall be received and opened.

All the courts hold that one of the purposes of advertising for bids is to secure competition. It is obvious that, before bids can be made, the bidder must be informed as to what is wanted. If, for instance, he is to bid on furnishing and equipping a courthouse and jail, there should be available for his inspection and examination a list of the articles wanted, with a description of the kind, quality, design or model where called for. This is necessary, not only to secure competition in the bidding, but also to insure a meeting of the minds of the owner and the bidder.

Under an act of similar import to ours, the Texas court (*Headlee* v. *Fryer*, [Tex. Civ. App.] 208 S. W. 213) had before it for consideration a contract to build a courthouse, and it was there said:

"The first point made is that the act contemplates that, before the commissioners' court shall enter into any contract for or in excess of $2,000, *it must definitely determine before inviting bids the character of the improvements contemplated*, which in the present case would be to adopt plans and specifications of the proposed building. Appellees contend that since the act does not specifically prescribe what preliminary steps shall be taken before submitting the contract to

competition, but leaves such matters for the judgment and discretion of the commissioners' court, what was done substantially attained the object sought. The act, it will be observed upon examination, is at most a bald requirement that no contract involving the expenditure of $2,000 or more shall be let save upon notice inviting competition. It means as much and certainly no less than that every contract, into which the county by its officers proposes to enter with another for whatever purpose, shall, if the amount be $2,000 or more, be submitted in the manner directed to competition. What steps county officials shall take in advance of the day set for submitting the contract the act does not undertake to specify. What is sought and required is obviously competition. It is left to the officials to present the matter in such form as to secure the desired end. That it is their duty to do so will not be denied. That being true, it occurs to us that they are put to the necessity of being prepared to present to those who may appear to bid upon the contract some intelligent and concrete statement of the work required to be done or the structure to be erected as would tend to induce competition, depending in every instance upon the character of the undertaking. Otherwise, there would be no competition, and as a consequence the purpose of the Legislature defeated. For it can hardly be denied there could and would be no bids received, at least in good faith, in the absence of some specification of what the county required to be done or furnished by prospective bidders on a contract requiring the expenditure of such a large sum. That some such step on the part of the county officials was contemplated is a necessary deduction from the act requiring them to submit all such contracts to competition. Certainly responsible contractors are not going to undertake the financial liability involved in so important a matter as constructing a county courthouse without first being precisely informed what is required by the county particularly when it is commonly known that intelligent bids are out of the question in the absence of such information. The most ordinary prudence

would require in such cases considerable particularity.'' (Italics ours.)

Standard text-writers lay down the same rule. Dillon on Municipal Corporations (5th ed.), section 807, says:

''When by charter or statute a municipality can only let its contracts to the lowest bidder after advertisement, an implied condition and restriction is placed upon the proceedings of the municipality that the various steps adopted by it to let a contract shall be of such a nature and taken in *such form as in good faith to invite competition.* Hence, persons bidding must bid upon a uniform basis, and the municipality must take steps to determine in advance the nature of the improvement, the material of which it is to be constructed and to ascertain all those facts which are necessary to enable an intending bidder to comprehend the scope of the improvement and the nature of the supposed contract, and bid accordingly. Therefore, something in the nature *of a specification* of the material or of a plan and specification for the improvement *must be adopted by the municipality* PRIOR TO INVITING BIDS. (Capitals ours.) . . . This is the rule whether the statute expressly requires plans and specifications to be furnished or is silent thereon, merely imposing the general duty upon the municipality to advertise for bids and to let the contract to the lowest bidder.''

McQuillin on Municipal Corporations, section 1207, states the rule:

''The purpose of advertising is to give publicity to the contract in question and thereby secure the utmost competition among bidders. Consequently, the advertisement should be sufficiently full and explicit to notify prospective bidders of the kind and nature of the subject of the contract, and should contain such information as will enable bidders to bid intelligently. *Bidders should be informed by the advertisement or the specifications on file,* of (1) the quantity or amount of the work or supplies, whenever

it can be specified; (2) the time within which the work is to be finished or the supplies furnished; (3) the manner in which the work is to be done; (4) the quality of the materials, if any, to be furnished; and (5) any other matter necessary to enable bidders to bid intelligently. Where neither the statute nor the charter contain any provisions in regard to the specifications, 'such information must be put within reach of bidders as will enable them to bid intelligently, and will enable the city to know whose bid is lowest.' *Detroit* v. *Hosmer,* 79 Mich. 384, 44 N. W. 622.'' (Italics ours.)

It seems to us that the notice by publication for the statutory period of forty days is not complete unless during such period the plans and specifications are on file in some accessible place. The authorities agree that such specifications should be made and adopted in advance of ordering the advertisement, and there would be no object in so doing, except that they might be available to bidders during the whole period of advertising. The advertised notice must either contain all the data necessary to inform the general public of what is wanted, or refer to specifications on file for such information, and if the latter method is adopted the notice would most certainly be defective and incomplete, unless the plans and specifications were on file for inspection during the whole period of publication.

*Sarver* v. *Los Angeles County,* 156 Cal. 187, 103 Pac. 917, and *People* v. *Nellis,* 14 Cal. App. 250, 111 Pac. 631, cited and relied upon by defendants, are not in point. In the latter case it was held the laws authorized the board of supervisors to go into the open market and purchase furnishings for public buildings. In such case, of course, the board could dispense with the advertising, with specifications and competitive bids; but that is not so under our statute. Indeed, the defendants seem to recognize this as the law, for it is alleged in the complaint that the pub-

lished notice for bids referred bidders and the public to plans and specifications then on file with the board of supervisors, but they were not in fact on file until twenty-six days before the date fixed therein for opening bids. Defendants now argue that was sufficient time for persons desiring to bid to inform themselves and prepare their bids; that all the law requires is that the specifications be accessible a reasonable length of time, and that twenty-six days is a reasonable time. But we think the statute has fixed what the lawmakers thought a reasonable time to advertise for bids at forty days, and that an advertisement for any less period would be insufficient.

Inasmuch as this case must be sent back for further proceedings, we might stop here; but some of the provisions of the specifications adopted by the board of. supervisors are called in question, and if they do not conform with the law, and allow the freest and widest competition among bidders, the parties ought to be advised of that fact, that corrections may be made prior to another call for bids thereon.

It is contended by plaintiffs that a call for bids for material, wherein the owner names a definite fixed sum available therefor and requires the bidders to bid that amount—no more, no less—based alone on quality and design, eliminates the competitive element of price, and results in defeating the provision of the statute requiring that the contract be let to "the lowest and best responsible bidder." Under the call here emphasis is placed upon the quality and design of the work and material. Bidders are warned that these must be of the highest order; that they may compete as to these, but not as to price. This form of offer takes out of consideration that a bidder in the same field, because of superior skill, knowledge and facilities, may manufacture and therefore furnish a better article for less than his competitor. The owner, we think, should take advantage of this by

authorizing bids for any sum, not exceeding the stated maximum. This the defendant undertook to provide for by the addenda sent out by the architect on December 15th. This alteration or change in the specifications could be made only by act of the board of supervisors, and by it only before the period of publication commenced, or at least forty days before the advertised date for opening bids.

Another provision of the specifications, stating, "Bidders will submit with their proposals a list of not less than three similar buildings they have furnished," is, it is alleged, unreasonable as tending to stifle competition. If this be construed as an indispensable qualification to bid, we concur with plaintiff that it is an unreasonable restriction. It is conceivable that there might be persons, who have not furnished three similar buildings, just as competent to perform a contract to equip the county courthouse and jail as those who have. If an arbitrary figure is to be adopted, why three, instead of a dozen? If there should be but one who had furnished three similar buildings, the provision would have the effect of eliminating all competition, as none other could bid.

As to the other specifications to which plaintiffs have excepted, we can see no serious objections.

While reversing the lower court, we wish to say that no suggestion appears in the record of favoritism or fraud on the part of the board of supervisors or the architect in proceeding in the manner disclosed. We arrive at our conclusion because both the law and public policy concur in a construction of our statute that will secure to the taxpayers, who must ultimately "foot the bill," the equipment desired under actual competition, and at the same time protect those representing the county from unjust and unfair criticism.

The situation in this state is not unlike that of Oklahoma in 1909, when the Supreme Court of that

state, in *Hannan* v. *Board of Education,* 25 Okl. 372, 30 L. R. A. (N. S.) 214, 107 Pac. 646, speaking through Mr. Justice DUNN, said: 

"The state of Oklahoma and its several subdivisions, counties, townships, cities, school districts, etc., are entering upon an era of public improvement. A statehouse is to be built, college and school buildings, courthouses, and bridges are to be erected and constructed all over the state. These improvements are to be paid for from taxes levied upon our whole people, and thousands and hundreds of thousands of dollars are to be expended therefor. The boards and public agencies intrusted with the important and responsible duties of selecting the materials, deciding upon the character of the work, letting the contracts, and spending this money should be surrounded by every reasonable safeguard possible. This should be done, not only for the safety of the funds, and the public welfare, but for their own protection. They are seldom engaged because of any particular training or fitness they possess over that common to all, and their compensation is frequently wholly inadequate to cover the time and energy they are required to bring to their labor. Under these circumstances a requirement that shall fix in advance upon certain definite plans and specifications, or propositions to be considered, and then submit these for open competition upon sealed proposals, the contract then to be awarded in an impartial way to the lowest responsible bidder, will tend to remove them from temptation and opportunity for fraud or favoritism. It will do more; it will materially assist in removing suspicion of unfairness and favoritism, and relieve honest men upon whom these duties devolve of unjust charges."

The judgment is reversed, and the cause remanded, with directions that the order of dismissal be vacated and the demurrer overruled, and that further proceedings be had not in conflict with this opinion.

LOCKWOOD, C. J., and McALISTER, J., concur.