FRANK P. FARRELL, INC., A CORPORATION, PROSECUTOR, v. BOARD OF EDUCATION OF NEWARK AND MAX COHEN, RESPONDENTS.

Argued May 7, 1948—Decided July 16, 1948.

Before Justices DONGES, COLIE and EASTWOOD.

For the prosecutor, *Harold Simandl* (*Fred A. Lorentz,* on the brief).

For the respondent Board of Education, *Jacob Fox.*

For the respondent Cohen, *Harry Krieger* and *Louis H. Hollander.*

The opinion of the court was delivered by
COLIE, J. This is the application of Frank P. Farrell, Inc., for a writ of *certiorari* or, in the alternative, for a rule to show cause why *certiorari* should not be allowed to review a resolution of the Board of Education adopted on April 5th, 1948, awarding a contract for heating and ventilating work on the Dayton Street School in the City of Newark to Max Cohen.

The Board of Education advertised for bids and in accordance with the statutory requirement contained in *R. S.* 18:11–7 and 18:11–10 called for a separate bid for the heat-

ing and ventilating contract. In February, 1948, bids were received but all were rejected and the Board of Education re-advertised. On March 10th, 1948, the second bids were received. The applicant, Farrell, Inc., submitted a base bid, including combustion controls, of $83,376 but the contract was awarded to Max Cohen whose base bid amounted to $83,624. As an additional proposal, the specifications called for the furnishing of temporary heat and this controversy turns upon the effect to be given to the bids on the additional proposal.

Despite the fact that the base bid of Farrell, Inc., was the lower, the contract was awarded to Cohen, the reason being that on the temporary heating, Farrell, Inc., bid $30 additional cost for each temporary radiator and $135 additional cost for temporary heat for 24 hour day; whereas the Cohen bid on the same items was $20 and $90, respectively. In the minutes of the Board of Education meeting at which the contract was awarded, it was explained that the contract was awarded to Cohen "although the base bid of Max Cohen was $176 higher than the next lowest bidder, Frank P. Farrell, Inc., the difference in the additional proposals which included temporary heat, made the bid of Max Cohen the lowest bid."

Certain phases of the law applicable to this situation are settled. The statute *R. S.* 18:6–26 provides that the contract shall be awarded to the lowest responsible bidder. In the absence of a question as to financial responsibility, the low bidder is entitled to an award of the contract as a matter of right. *Sellitto* v. *Cedar Grove*, 133 *N. J. L.* 41.

Prosecutor argues that the additional proposal for unit prices for the furnishing of temporary heat is indefinite and destroys the common standard requisite to put all bidders upon an equal footing. This argument is not now available to the prosecutor. It comes before the court on the basis of being the low bidder and in no other capacity. In *McGovern* v. *Trenton*, 60 *N. J. L.* 402, prosecutor attacked the award of a paving contract to a third party and sought to challenge, *inter alia*, certain specifications upon which the bids were based. The court held that prosecutor might not do so, saying: "the prosecutor is here solely because of his claim to

have been injuriously affected, *as a bidder,* by the action of council in awarding the contract to another than himself. He is not, so far as the case shows, a taxpayer of the city, and has not intervened as such for the purpose of preventing the illegal expenditure of municipal funds. \* \* \* Even if it be true that \* \* \* certain of the specifications upon which the contract rests are illegal, the prosecutor has no personal or property interest which has been injuriously affected thereby, and it is entirely settled that a *certiorari* to review the acts of public officials will not lie in favor of prosecutors who have no personal or property interest to be specially and immediately affected by the action complained of."

Whatever standing Farrell, Inc., may have arises solely from its asserted status as the lowest bidder and that requires a determination of whether the unit prices submitted for temporary heat should be considered in arriving at a determination of which bid is the lowest. In *Browning* v. *Freeholders of Bergen,* 79 *N. J. L.* 494, the Court of Errors and Appeals stated that the demand for unit prices as a protective measure to the public in the event of modification of the work to be done by the contractor, is entirely unobjectionable. In the cited case the award of the contract was set aside on the ground that there was no common standard set up in the specifications. The court said: "It is universally recognized that where there is no common standard there is no competition" and explained its meaning as follows: "What the board in the present case did was to abandon the competitive feature set forth in their proposal and, instead of awarding the contract to the bidder whose bid of the sort called for was the lowest, to base their award upon estimates compiled by their own engineer from the unit prices furnished by the various bidders in response to a totally different demand, and then to apply the bids thus fabricated to a changed scheme of construction that differed radically from that exhibited to the bidders in the plans and specifications to which the competitive bidding, both by the statute and by the proposal itself, had been expressly addressed. As an illustration of the radical difference between the work for which bids were invited, and that to which the supposititious competition was referred,

it may be stated that, with respect to one part of the work alone, where the advertised plan called for sixteen spans, the substituted plan called for but two spans; and where but four thousand cubic yards of embankment were called for in the advertised plan the substituted plan called for considerably more than forty thousand."

The situation before the court in the *Browning* case disclosed a complete abandonment of the competitive feature. Such however is not the case here. In the proposal for temporary heat every essential element necessary for a common standard upon which to base competitive bids was present excepting for the number of days that it would be required. That element was incapable of being accurately determined in advance of the event. It was this uncertainty that necessitated the call for unit prices. The specification for the temporary heat met the test as laid down in *Phifer* v. *Bayonne*, 105 *N. J. L.* 524: "The specifications are as definite as was practicable, from the character of the work which was to be performed and the quality and quantity of the work, and the materials to be furnished. The specifications give precise and full information to prospective bidders, as the nature of the contemplated work permits. No more than that can reasonably be required. It is sufficient and meets with legal requirements, when it appears, as it does in this case, that the specifications furnish the same information to all prospective bidders, so that there may be intelligent bidding."

In our judgment the proposal for temporary heat was an integral part of the main heating contract and we see no merit in the contention that the unit prices were not to be considered in determining the low bidder.

The application for a writ, or, in the alternative, for a rule to show cause is denied, with costs.