27 N.J. Super. 33 (1953)
98 A.2d 689
SHORE GAS AND OIL COMPANY, INC., A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
THE BOROUGH OF SPRING LAKE, IN THE COUNTY OF MONMOUTH, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued July 13, 1953.
Decided July 28, 1953.
*35 Before Judges EASTWOOD, JOSEPH L. SMITH and HANEMAN.
Mr. Elvin R. Simmill argued the cause for the plaintiff-appellant.
Mr. Gilbert H. Van Note argued the cause for the defendant-respondent.
The opinion of the court was delivered by EASTWOOD, S.J.A.D.
To provide for its annual consumption of gasoline, the defendant municipality advertised *36 for sealed bids for 18,000 gallons, more or less, of Esso Extra Gasoline as manufactured by Standard Oil Company. The plaintiff submitted a bid for furnishing "Esso Extra Gasoline, or a product of EXACTLY same quality and specifications," and stated further, "The product to be delivered shall be Cities Service Premium gasoline as manufactured by the Cities Service Oil Co. and which is exactly as quality and specifications of the described item of Esso Extra Gasoline as manufactured by Standard Oil Co." The plaintiff's bid of $.153 per gallon was lower than the only other bid submitted, that of the Standard Oil Company of New Jersey, but the governing body of the defendant municipality refused to consider plaintiff's bid because it was not for Esso Extra Gasoline.
In its complaint, filed in lieu of a prerogative writ, the plaintiff demanded that the defendant be directed to consider its bid and award to it a contract therefor or, in the alternative, that the defendant's receipt of bids be declared invalid.
Defendant asserted that plaintiff had not bid to supply the product called for and that R.S. 40:50-1 did not prevent its specification for bids on brand name products and, therefore, under the circumstances, the municipality was justified in excluding plaintiff's bid.
On plaintiff's motion for summary judgment, the trial court dismissed plaintiff's action holding that it was not necessary for the defendant to advertise for bids under R.S. 40:50-1, since individual purchases did not exceed $1,000; and that the defendant might advertise for bids under a brand name. From the judgment of dismissal the plaintiff appeals.
The pertinent section of the statute under which the issue in the matter sub judice has arisen provides, inter alia:
"No municipality shall enter into any contract for the doing of any work, or for the furnishing of any materials, supplies or labor, or the hiring of teams or vehicles, where the sum to be expended exceeds the sum of one thousand dollars, unless the governing body shall first publicly advertise for bids therefor, and shall award the contract to the lowest responsible bidder."
*37 The legislative intendment of this type of enactment regulating the expenditure of public funds has been held to afford maximum protection to the taxpayer where expenditures will be in excess of the figure mentioned in the statute. As stated in Waszen v. City of Atlantic City, 1 N.J. 272, 283 (1949):
"The philosophy and purposes of the statutes respecting municipal contracts have been enunciated in our decisions upon numerous occasions. The law is well settled that economy must be secured and fraud, favoritism and extravagance prevented to the end that all bidders will be on the same basis in matters material to the proposed municipal action. As said in Tice v. Long Branch, supra, and iterated in Rankin v. Board of Education of Egg Harbor Twp., supra, `The rule is one which is rooted deep in sound principles in public policy of general application. It should be rigidly adhered to by the courts, and not frittered away by a careless or indifferent application to specifications, that are not clear, precise and definite on all matters, that are material to the proposals, to which bidders are invited to compete. The necessity of having a common standard, and the importance of definite and precise specifications upon which to found corporate action, are too apparent to require argument.' * * *"
Cf. Schwartz and Nagle, etc., v. Bd. of Chosen Freeholders, 6 N.J. Super. 79, 82 (App. Div. 1949); A.C. Schultes & Sons v. Haddon Tp., 8 N.J. 103, 108 (1951).
In the event that the statute applies, it is mandatory; there is no room for discretion, and the contract must be either awarded to the lowest responsible bidder or all bids must be rejected. Armitage v. Newark, 86 N.J.L. 5 (Sup. Ct. 1914); Paterson Contracting Co. v. Hackensack, 99 Id. 260 (E. & A. 1923); American Water Corp. v. Florham Park, 5 N.J. Misc. 969 (Sup. Ct. 1927); Schwartz and Nagle, etc., v. Bd. of Chosen Freeholders, supra. The statute applying to municipalities, and to counties, as well (R.S. 40:50-1), is mandatory. Schwartz and Nagle, etc., v. Bd. of Chosen Freeholders, supra.
It is suggested that since the municipality, in the matter sub judice, did not expend in excess of $1,000 on any single purchase of gasoline it was not governed by the aforementioned statutory provision. Under the circumstances prevailing *38 here, we do not agree with this contention. The municipality elected to purchase its supply of gasoline on an annual basis. It is undisputed that the total cost thereof exceeded $1,000. It having been determined from past experience and the continued likelihood of purchases of gasoline in excess of $1,000 annually, the municipality quite properly considered the mandate of R.S. 40:50-1, in advertising for bids for approximately 18.000 gallons of gasoline, the expected consumption. In the case of McKim v. South Orange, 133 N.J.L. 470 (Sup. Ct. 1945), the cost of collecting refuse exceeded $75,000 annually and the municipality adopted a plan for collection by several licensed scavengers selected by the trustees, the cost assumed by the resident users. Mr. Justice Case, speaking for the former Supreme Court, held the plan to be invalid, stating in that case at pp. 473, 474:
"* * * Certainly the aggregate of such moneys to be paid to and received by the scavenger will greatly exceed the sum of $1,000, which is the cost limit for contracting without public bidding. R.S. 40:50-1 incorporated by reference in R.S. 40:66-4, supra. Obviously, the village could not contract directly for the doing of the work without calling for bids. The proposed method is, we think, in violation of a public policy, implicit in these and other statutes, that public work exceeding a limited sum shall not be awarded except upon advertisement and to the lowest responsible bidder. The evils attendant upon an award without open bidding are not less under license than under direct contract. Splitting the total cost among the property-users by a system that leaves to them no choice but to incur and pay the expense does not alter the fact that in essence an award of public work at a price of many thousands of dollars is being made to a private contractor without competition in bidding. * * *"
Similarly, the present Supreme Court, in the case of A.C. Schultes and Sons v. Haddon Tp., supra, at p. 108, stated that the statutory protection to the taxpayer is mandatory "where expenditures will be in excess of the figure mentioned in the statute."
The underlying policy being the encouragement of public bidding, pursuant to the advertisement therefor and to protect the lowest responsible bidder and to avoid favoritism, corruption and extravagance, and to secure economy in the *39 government, we conclude that specifications for the proposed purchase should be so framed to allow for and to insure this all-inclusive purpose and not to in anywise so restrict the specifications as to exclude a qualified bidder from furnishing non-unique "goods, chattels, supplies or materials of any kind." In this age of advertising claims, counter-claims and coveted trade and brand names where in the highly competitive fields every assertion of quality or performance may be considered either an infringement upon or an attack against a competitor's product the clarity, preciseness and definiteness of specifications for matters of proposed purchases becomes an increasingly difficult task for the purchaser. Under such circumstances, where experience has proven a particular brand or trade-name product to be satisfactory, the specification may, in the opinion of this court, call for a particular product by that name and add the phrase "or product of equal or better quality," and thus avoid an unnecessary restriction upon otherwise qualified bidders at the possible infringement of the intendment of the statute. Schwartz and Nagle, etc., v. Bd. of Chosen Freeholders, supra.
The municipality contends that in view of the fact that its individual purchases of gasoline are less than $1,000, R.S. 40:50-1, requiring the advertisement for bids has no application. Frankly, we think that this contention is without merit. The record is clear that the municipality took appropriate action to purchase its supply of gasoline on an annual basis and, as heretofore stated, the total cost thereof being in excess of $1,000, the provisions of R.S. 40:50-1 became mandatory and controlling upon the municipality. While we are not called upon to decide whether the municipality may make its gasoline purchases in such quantities as may be required from time to time, we are inclined to the view that "gasoline" comes within the appellation of "materials, supplies" requiring the advertisement for bids, particularly where, as here, the municipality ascertained that the annual cost thereof exceeded the sum of $1,000.
The judgment is reversed.