36 N.J. Super. 164 (1955)
115 A.2d 131
JUICE BAR CORP., A CORPORATION OF THE STATE OF NEW YORK, PLAINTIFF-RESPONDENT,
v.
TOWNSHIP COMMITTEE OF THE TOWNSHIP OF NEPTUNE, TOWNSHIP OF NEPTUNE, A MUNICIPAL CORPORATION, JOHN W. KNOX, CLERK OF THE TOWNSHIP OF NEPTUNE, AND SOMMER BROTHERS CONSTRUCTION COMPANY, A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANTS-APPELLANTS. EDWARD SCHWARTZ AND SYDELLE HOLDING CO., A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFFS-RESPONDENTS,
v.
TOWNSHIP OF NEPTUNE, IN THE COUNTY OF MONMOUTH, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, JOHN W. KNOX, AND SOMMER BROS. CONSTRUCTION COMPANY, A CORPORATION OF NEW JERSEY, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued May 9, 1955.
Decided June 2, 1955.
*166 Before Judges CLAPP, JAYNE and FRANCIS.
Mr. James R. Laird argued the cause for defendants-appellants Township Committee of the Township of Neptune, etc. (Mr. D. Joseph DeVito, attorney for defendant-appellant Sommer Bros. Construction Company).
Mr. Julius Stein argued the cause for plaintiffs-respondents Edward Schwartz and Sydelle Holding Co. (Messrs. Stein and Feinseth, attorneys; Mr. Benjamin I. Kreitzberg, on the brief).
Mr. Alexander Krauss argued the cause for plaintiff-respondent Juice Bar Corp. (Messrs. Levy and Krauss, attorneys; Mr. Paul Parker, on the brief).
The opinion of the court was delivered by JAYNE, J.A.D.
The Township of Neptune, in the County of Monmouth, had acquired title to a group of several vacant lots mainly by means of tax foreclosures. The lots were not needed for public use and the township committee on July 27, 1954 resolved to offer them for sale in congregation to the highest bidder after public advertisement at a minimum price of $40,000. The disposal of the lots was evidently intended to be accomplished pursuant to the authority conferred by N.J.S.A. 40:60-26(a).
*167 The published notice designated August 12, 1954 as the date of the sale, and in addition to other pertinent information it exhibited the following conditions and specifications:
"1. Fifty per cent (50%) of the purchase money in excess of the $40,000.00 deposit to be paid at the time the lands and premises are struck off. If the money is not paid at that time the lands and premises may be put up and re-sold immediately. The balance to be paid within ten (10) days upon the delivery of a bargain and sale deed without covenants.
2. The said lands and premises are sold subject to all municipal, state and Federal ordinances, statutes and regulations affecting the use of the said lands and premises, and subject to the covenants, conditions and restrictions contained in prior deeds affecting said lands and premises.
3. No bids will be accepted at the sale unless the bidder has previously deposited with the Township Treasurer cash or a certified check in an amount of not less than $40,000 no later than three (3) days prior to the date of the sale.
4. All bidders shall submit plans of the type of buildings proposed to be erected at least three (3) days prior to the date of the sale, in order that they may be examined and approved by the Building Inspector, or other official designated by the Township Committee.
5. The successful bidder shall be required to erect dwellings, construct or reconstruct all roads adjoining said lots, provide curbs, water, sanitary sewers, and whatever other service or requirement within a reasonable time after taking title. All bidders shall, at least three (3) days prior to the date of sale, submit evidence of financial responsibility to complete the erection of dwellings, construction and reconstruction of roads, curbs, water, sanitary sewers, and ability to provide for other required services.
6. The successful bidder shall at the time of delivery of the deed pay, as an additional purchase price, a sum equal to the amount of tax based on the last assessed valuation from the first of the month after the date of the sale until the end of the current year, and also all legal conveyancing fees.
7. Any successful bidder failing to complete the sale shall forfeit to the Township of Neptune any and all moneys deposited with the bid.
8. The sale of the hereinbefore described lands and premises is subject to confirmation by the Township Committee, which may reject any or all bids and may hold any bid for a period of fifteen (15) days before acting thereon."
Obviously the sale was intended to be a public one conducted on the basis of competitive bidding. An indispensable element of such a sale is the existence of a definite *168 common standard to which all of the competitive proposals alike relate. A common pattern is the foundation of just competition.
The basic philosophy of our statutes respecting municipal contractual action is that economy must be secured, extravagance forbidden, and opportunities of fraud or favoritism suppressed. Waszen v. City of Atlantic City, 1 N.J. 272, 283 (1949); Weinacht v. Bd. of Chosen Freeholders of County of Bergen, 3 N.J. 330, 333 (1949); Johnson v. Atlantic City, 85 N.J.L. 145 (Sup. Ct. 1913); Armitage v. City of Newark, 86 N.J.L. 5 (Sup. Ct. 1914); Tice v. Commissioners of City of Long Branch, 98 N.J.L. 214 (E. & A. 1922); Rankin v. Board of Education of Egg Harbor Twp., 135 N.J.L. 299 (E. & A. 1947); Markey v. City of Bayonne, 24 N.J. Super. 105 (App. Div. 1952); Shore Gas & Oil Co. v. Spring Lake Borough, 27 N.J. Super. 33, 37 (App. Div. 1953).
Our attention fastens upon the conditions and specifications stated in the fourth and fifth paragraphs. In the fifth we observe that the successful bidder shall be required to erect dwellings. The required or minimum number, the size, the type other than dwellings, the minimum cost of construction, whether all of similar type, and upon what lots, are some of the unspecified particulars of supreme importance. The successful bidder is obliged to construct or reconstruct all roads adjoining the lots. Which roads, if any, are to be reconstructed? Of what materials are the roads to be constructed, and of what width? Moreover "curbs, water, sanitary sewers, and whatever other service or requirement" are to be installed "within a reasonable time after taking title." Of what nature is "the other service or requirement"? Electricity connections, perhaps? What period of time is to be deemed reasonable?
The fourth condition seems to expose the contemplation that each of the bidders was to be at liberty to choose the type of "buildings" he expects to erect. The plans devised by the individual bidder were to be previously submitted for *169 the approval of the "Building Inspector or other official designated by the Township Committee."
And then whatever type of dwellings the bidder may himself plan to erect, whether permissible cabins or stately mansions, and whatever the class of roads, curbs, and sewers he proposed to construct and install, the bidder was required to submit three days prior to the sale "evidence of financial responsibility" to complete the eventual development and of his "ability to provide for other required services." (Emphasis supplied) We would suppose that the requisite evidence of the financial responsibility of each bidder need only be commensurate with the cost of the type and class of the improvements which he himself expects to provide.
While the pertinent statute permits the governing body to impose "any conditions of sale as to buildings or structures to be erected" on the lands, or "as to the type, size or other specifications of such buildings or structures," it carries the mandate that "the restrictions on the use to be made of the land and the conditions of sale shall be set forth at length" in the advertisement. The reasonable import of this provision, if regarded as applicable to a condition obligating the purchaser to an affirmative future accomplishment, is that the condition shall be clearly and precisely expressed in the advertisement and be applicable in common to all bidders.
Here the design was to allow each bidder to propose his own type of dwelling and to enable the municipal governing body, presumably with the advice of the building inspector, to examine the variety of types and to prefer and adopt any one of them.
Assuredly, the method of soliciting bids at a public sale which was employed in this instance offended the fundamental statutory object of competitive proposals.
We next divulge the eventualities. The two corporate plaintiffs resolved to submit bids at the sale and in furtherance of that intention each presented to the township clerk on August 9, 1954 a certified check for the required deposit of $40,000, a set of blueprints, and a statement purporting *170 to evidence its financial responsibility. The township committee held a special meeting on the evening before the day of the sale and passed the resolution here reproduced:
"WHEREAS, The Township Committee has carefully examined the plans and statements of the prospective bidders for the purchase of property in the Asbury Gables section pursuant to a resolution adopted July 27, 1954, and notices duly published;
THEREFORE, BE IT RESOLVED, That it is hereby determined that the Sommer Bros. Construction Company, Inc., and the Hohokus Bleachery, Inc., have complied with the terms of the said resolution and notices and are qualified to bid for and purchase said property; and,
BE IT FURTHER RESOLVED, That the Clerk be and he is hereby instructed to conduct the said sale."
The disqualification of the two plaintiffs to participate in the bidding was unknown to their representatives until their arrival at the sale the following day, when they were informed that their respective companies had been excluded from bidding. The representative of the plaintiff Juice Bar Corp. was authorized to bid up to $46,500.
In consequence of the disqualification of the plaintiffs there remained but two bidders, whereupon the one, Hohokus Bleachery, Inc., requested and was granted permission to withdraw its proposal. The bidders were reduced to one.
Thus emancipated from the pressure of all competitive resistance, Sommer Brothers Construction Company offered the sum of $40,500 and thereby became the successful bidder.
The plaintiffs instituted the present action to invalidate the sale. Judge Lloyd, upon cross-motions, granted a summary judgment nullifying the sale, and the township has transported the judgment to us for appellate review.
It is significantly interesting to contrast the vagueness of the specifications stated in paragraph five of the advertisement of sale with those more intelligibly detailed in the affidavit of the township clerk which was filed in this action. We discover that one of the "whatever other requirements" was the necessity of clearing, grading, and filling of the lots.
We therefore have not hesitated to express the opinion that the published conditions and specifications were so unsuitably *171 and impractically composed that no common and definite standard existed upon which comparable competitive bids could be solicited. This fundamental invalidity would normally transcend the determination of the propriety or impropriety of the disqualification of the plaintiffs as prospective bidders resulting from the antecedent examination of "the plans and statements."
We must pause, however, to consider whether the plaintiffs are legally privileged to impugn the validity of the sale. The rule is familiar that one cannot take advantage of the opportunity to achieve a contract under invalid conditions and specifications and then, when unsuccessful, seek by the prosecution of a civil action to have the award annulled. Farrell, Inc., v. Bd. of Education of Newark, 137 N.J.L. 408 (Sup. Ct. 1948); Waszen v. City of Atlantic City, supra; Camden Plaza Parking v. City of Camden, 16 N.J. 150, 158 (1954).
Concededly, neither plaintiff is a taxpayer of the municipality. Neither sues in the situation of an unsuccessful bidder toward whom the rationale of estoppel is invoked. In reality the plaintiffs were deprived of their right to bid. The resolution excluding them from the bidding is conspicuously uninformative of the respects in which the plans and statements of the two plaintiffs were not in substantial conformity with the terms of the advertisement of sale.
Moreover, neither plaintiff was forewarned of any irregularity in the plan or financial statement it presented, nor accorded any opportunity whatever to correct any such claimed unconformity. Vide, Faist v. City of Hoboken, 72 N.J.L. 361 (Sup. Ct. 1905).
While inexactness diffused the specifications in the notice of sale, exactness seems to have pervaded the examination of the plans and statements submitted by the prospective bidders. The plaintiffs assuredly manifested their desire and intention to bid by their respective deposits of $40,000, and although the financial statements may have been in some respects insufficient, the action of the township committee in positively and unqualifiedly excluding them from participating *172 in the bidding was in our judgment arbitrary and oppugnant to the public interest.
From aught that appears in the resolution of August 11, 1954, the predominantly influential reason for the exclusion of the plaintiffs may well have been a preference for the plans of the Sommer and Hohokus companies over those of the plaintiffs. Such a course of discriminatory action was inherently available to the committee in the method by which the proposed sale was to be conducted.
Confronted by the peculiar circumstances of the present case, we conclude that the personal or property right of the plaintiffs to bid at a public sale and the arbitrary and unjustified deprivation by the municipality of the exercise of that right by the plaintiffs entitle them to prosecute the present action. Our thought is that the preclusion from bidding specially affected them. Contrast, McGovern v. Inhabitants of City of Trenton, 60 N.J.L. 402, 404 (Sup. Ct. 1897).
The judgment under review is affirmed.