401 P.2d 753

**SULPHUR SPRINGS VALLEY ELECTRIC COOPERATIVE, INC., a public service corporation, and Sid Wilson, a taxpayer individually, and on behalf of all other persons similarly situated, Appellants,**

v.

**The CITY OF TOMBSTONE, a Municipal Corporation, and Walter C. Foster, Lawrence D. McCabe, Sanford Taylor, J. M. Holzhauser and W. J. Meyer, Mayor and Common Council of the City of Tombstone, a Municipal Corporation, and Arizona Public Service Company, a corporation, Appellees.[*]**

No. 2 CA–CIV 35.

Court of Appeals of Arizona.

May 12, 1965.

Rehearing Denied June 8, 1965.

* This appeal was filed with the Arizona Supreme Court and assigned that Court's Number 7622. The matter was referred to this Court pursuant to § 12-120.23 A.R.S.

Gentry & McNulty, by James F. Mc-Nulty, Jr., Bisbee, for appellants.

Evans, Kitchel & Jenckes, by Earl H. Carroll, Phoenix, for appellee City of Tombstone.

Snell & Wilmer, by Roger W. Perry, Phoenix, for appellee Arizona Public Service Co.

HATHAWAY, Judge.

This appeal presents for our consideration the validity of a sale of municipally-owned utilities. Sulphur Springs Valley Electric Coop., Inc., and Sid Wilson, a taxpayer, filed an action in Cochise County against the City of Tombstone, its Mayor and Councilmen. The plaintiffs sought to enjoin the defendants from selling and conveying the City's gas and electric utilities and also sought a decree setting aside as illegal and void the election to sell the utilities. Arizona Public Service Company, the successful bidder on the purchase of the utilities, appeared as intervenor. After a lengthy trial, the lower court dismissed the plaintiffs' complaint and entered judgment for the defendants and intervenor. The plaintiff utility company appealed from the judgment entered below and alleges that:

1. The court erred in dismissing the claim because:

   (a) The bidding for the sale of the gas and electric systems was conducted in such a manner as to stifle competition and

   (b) The sale of the utilities did not comply with the requirements of the Arizona Revised Statutes governing sales of municipally-owned real property.

2. The court erred in refusing to allow plaintiffs to amend their pleadings to conform to the evidence.

The briefs submitted by appellant set forth an additional assignment of error but appellant, on oral argument, withdrew the matter from this court's consideration.

The following is a brief summary of the pertinent facts: The City of Tombstone owned and operated an electrical distribution system and a gas distribution system, serving residents within the city limits. In 1957, the City requested Arizona Public Service Company to consider the possibility of purchasing the systems. Since the City received no formal offer, it entered into a five-year contract with appellant for the purchase of wholesale electric power by the City.

In 1960, the City again sought prospective purchasers and solicited proposals. Arizona Public Service submitted a proposal in 1961; the appellant did not. Shortly thereafter, the City Council retained the services of an engineering firm to study the proposal. After receiving and considering the firm's report, the City Council voted to sell both utilities as a unit, subject to a vote of the qualified electors. Notice of invitation for bids was published and posted, calling for bids on the purchase. Appellant did not enter a bid but wrote a letter to the City Council expressing its opinion that the City should not sell the utilities. Two bids, including that of Arizona Public Service, were submitted. The Council voted to accept the bid of Arizona Public Service, subject to a vote of approval by the electors of Tombstone. Prior to the election, there was much public airing of views concerning the advisability of the sale. The election resulted in an approval of the sale.

Appellant contends that the sale is void because competitive bidding was stifled by requiring bids on a "package deal," i.e., both utility systems as a unit. Appellant cites numerous cases including the Arizona cases of Berryhill Office Equipment Company v. Phillips, 35 Ariz. 180, 276 P. 4 (1929); Prescott Courier, Inc., v. Moore, 35 Ariz. 26, 274 P. 163 (1929); Gamewell Company v. City of Phoenix, 9 Cir., 216 F.2d 928 (1954). The cases cited involved solicita-

tion of bids for the furnishing of services or materials to municipalities.

In Berryhill, the sale was declared void because of failure of the advertisement for bids to adequately inform prospective bidders as to the plans and specifications, the very subject of the contract. The court stated "[t]he purpose of advertising is to give publicity to the contract in question and thereby secure the utmost competition among bidders."

In the Prescott Courier case, the Yavapai County Board of Supervisors advertised for package bids for newspaper publication and printing of every kind required or authorized to be done by the Board of Supervisors. The court held that the advertisement for bids was illegal in that it limited bids to newspapers and denied to job printers an opportunity to bid on work which they were amply qualified to perform. The court found that the advertisement for bids discriminated against a certain class of bidders with no reasonable ground therefor.

The municipal contract involved in the Gamewell Company case was declared illegal for the reason that the restrictiveness and inadequacy of the specifications filed, describing the nature of the work to be bid on, resulted in eliminating real competitive bidding. Concededly, an indispensable element in the sale of municipally-owned property is the fixing of a definite common standard to which all of the competitive proposals alike refer.. Juice Bar Corp. v. Township Committee, 36 N.J.Super. 164, 115 A.2d 131, 133 (1955).

The instant case is distinguishable from the Berryhill and Gamewell Company cases in that the bidders on the City of Tombstone's utility systems knew exactly to what their bids were directed. Furthermore, unlike the Prescott Courier case, supra, we do not have here unreasonable discrimination against a certain class of bidders.

The record discloses that Tombstone's City Council had for a protracted period of time been considering a sale of the utility systems, singly and jointly. It

is axiomatic that the City Council had a duty to weigh possible advantages and disadvantages to Tombstone residents of single ownership of both utilities. Reaching a decision required deliberation on many economic factors, including the practicability of selling one utility and retaining the other. Duplication of office space and personnel and maintenance equipment and personnel is greatly eliminated through a single ownership. The possibility of an ultimate reduction in utility rates as a result of reduced overhead costs, thereby benefiting the people of Tombstone, would understandably incline the City Council to a joint sale. We find support in the record for the City's decision to sell the utilities jointly in the form of testimony of consultant engineers, who testified that one utility should not be sold without selling the other.

It is fundamental that sales of public property must be openly and fairly conducted. To accomplish this by means of competitive bidding, there must be notice, a reasonable opportunity for those interested to appear and be heard, and fairness in connection with the sale. Stone v. Salt Lake City, 11 Utah 2d 196, 356 P.2d 631, 636 (1960). Statutes governing the sale of public property are designed to secure the most beneficial terms for the public body, and the basic philosophy underlying these statutes is that economy must be secured, extravagance avoided, and opportunities for fraud or favoritism suppressed. Juice Bar Corp. v. Township Committee, supra; Shore Gas & Oil Co. v. Spring Lake Borough, 27 N.J.Super. 33, 98 A.2d 689, 692 (1953). Consideration of advantages or disadvantages to those bidding for the property must of necessity be secondary to the general welfare of the public.

Albeit the City of Tombstone may have adopted some other method in selling its utilities, its procedure in requesting proposals, procuring engineering data and soliciting bids for the sale encompasses the basic elements of propriety in dealing with such public business. Stone v. Salt Lake City, supra. This is further supported in the record by the testimony of expert witnesses to the effect that the sale price received for the utilities was a fair value. The decision of the City Council to invite bids on a "package deal," thereby eliminating bids on the individual systems, was a question of policy and was within their discretion as a governing body. Bassett v. Mayor and Board of Commissioners, 122 N.J.L. 250, 4 A.2d 393, 394 (1939); 64 C.J.S. Municipal Corporations § 2142.

This court will not assume to substitute its judgment for that of the City Council unless its exercise of discretion is shown to have been unquestionably abused. City of Glendale v. White, 67 Ariz. 231, 237, 194 P.2d 435 (1948). An attack on the validity of a contract made by a municipality asserting an abuse of discretion by the City Council must establish that the contract is either tainted with fraud or so inequitable and unreasonable that it amounts to an abuse of discretion. City of Phoenix v. Landrum & Mills Realty Co., 71 Ariz. 382, 388, 227 P.2d 1011 (1951). This, the appellant has not shown. Accordingly, we hold that there is no basis for invalidating the sale on the ground that competition was stifled.

Appellant contends that the pipes, poles and the wires which are the chief components of the utility distribution systems, are fixtures and therefore real property with a value in excess of $25,000. The sale is attacked on the grounds that it did not comply with A.R.S. § 9–403 in that the property was not sold at public auction to the highest bidder for cash. Appellees maintain that the chattels retained their character as personalty and that A.R.S. § 9–403 is inapplicable. The section in question provides:

"A.R.S. § 9–403. Sale of real property valued at twenty-five thousand dollars; special election; sale at auction

"A. Real property of a city or town, the value of which exceeds twenty-five thousand dollars, shall not be sold unless first authorized by a special election. * * *.

\*    \*    \*    \*    \*    \*

"C. If a majority of the ballots cast are in favor of selling, then the governing body may sell the property at public auction \* \* \* to the highest bidder for cash \* \* \*."

The record shows that the property was not sold at public auction. It also shows that the city attorney advised that A.R.S. § 9–402 must be followed, requiring publication and posting of the invitation for bids for the purchase of a property. He further advised that A.R.S. § 9–403 does not apply when the value of the real estate involved is less than $25,000, and "virtually all" of the property to be sold was personalty. However, a few easements were involved which constituted an interest in real property. Therefore, it would be necessary to submit the question of selling to a vote of the electors, as the city charter specified that it was unlawful to sell any real estate without first submitting the matter to a vote of the electors.

In the case of Fish v. Valley Nat. Bank of Phoenix, 64 Ariz. 164, 170, 167 P 2d 107, 111 (1946), the Supreme Court of Arizona has laid down the general test to determine whether a chattel which has in some manner been affixed to realty shall become a part thereof or retain its status as personalty. The court said:

"The rule is that for a chattel to become a fixture and be considered as real estate, three requisites must unite: There must be an annexation to the realty or something appurtenant thereto; the chattel must have adaptability or application as affixed to the use for which the real estate is appropriated; and there must be an intention of the party to make the chattel a permanent accession to the freehold."

This statement of the general test to be applied has been approved in City of Phoenix v. Linsenmeyer, 78 Ariz. 378, 380, 280 P.2d 698, 52 A.L.R.2d 219 (1955); Voight v. Ott, 86 Ariz. 128, 132, 341 P.2d 923 (1959).

In the case at bar, it appears that a portion of the equipment is affixed to the realty above the ground, while a certain portion consisting of pipes is buried in the ground. The modern tendency is to place less emphasis on the mode of annexation of the chattel and to give greater consideration to the intention of the parties as respects the use and adaptability thereof. Voight v. Ott, supra. There is no evidence of an agreement between the City of Tombstone and the owners of the fee that the chattels were to become accessions to the realty. The chief factor to consider is— What was the intention of the annexor, the City of Tombstone? Taking into account the fact that the City did not own the land, and that the chattels were affixed only to realty upon which the City held an easement, it may be presumed that the annexation to the land was only temporary, and was not made to become a part thereof, Fish v. Valley Nat. Bank of Phoenix, supra; 36A C.J.S. Fixtures § 53, p. 718; City of Vallejo v. Burrill, 64 Cal.App. 399, 221 P. 676, 679 (1923).

Applying the test laid down in the Fish case supra, to the record in the instant case, we find proof of only one of the three requisites, i.e., an annexation to realty. The general rule is that he who asserts the affirmative of an issue has the burden of proving it. Udall, Arizona Law of Evidence, § 5 and cases cited therein. Appellant, who asserted that the circumstances of the annexation made the chattels part of the realty, had the burden of proof. 36A C.J.S. Fixtures § 63 a, p. 730. There being no proof of (a) adaptability to the use for which the real estate was appropriated nor (b) intention of the annexor that the attachment of the chattels was to be permanent, appellant has not sustained its burden of proving that the utility equipment had become fixtures. Therefore, we hold that the equipment had not lost its character as personalty and a sale at public auction in compliance with A.R.S. § 9–403 was not required.

Appellant attributes error to the trial court's refusal to allow a trial amendment to conform the complaint to the proof. At the close of its case, appellant moved the court to allow an amendment to the complaint to set forth a claim for relief based upon a violation of A.R.S. § 9–403, supra. In view of our foregoing discussion concerning the character of the equipment, the trial court properly denied the motion to amend the complaint to conform to the proof.

Judgment affirmed.

KRUCKER, C. J., and MOLLOY, J., concur.