407 P.2d 76

**SULPHUR SPRINGS VALLEY ELECTRIC COOPERATIVE, INC.,** a public service corporation, and Sid Wilson, a taxpayer, individually, and on behalf of all other persons similarly situated, Appellants,

v.

The **CITY OF TOMBSTONE,** a Municipal Corporation, and Walter C. Foster, Lawrence D. McCabe, Sanford Taylor, J. M. Holzhauser and W. J. Meyer, Mayor and Common Council of the City of Tombstone, a Municipal Corporation, and Arizona Public Service Company, a corporation, Appellees.

No. 7622 PR.

Supreme Court of Arizona,

En Banc.

Nov. 3, 1965.

Gentry & McNulty, Bisbee, for appellants.

Earl H. Carroll, Phoenix, special counsel for City of Tombstone.

Roger W. Perry and Nicholas H. Powell, of Snell & Wilmer, Phoenix, for appellee Arizona Public Service Co.

STRUCKMEYER, Vice Chief Justice.

This cause arises out of an action by Sulphur Springs Valley Electric Cooperative, Inc., and Sid Wilson, a taxpayer, for a permanent injunction against the City of Tombstone, a municipal corporation, and the Mayor and the Members of the Common Council thereof, to enjoin the sale and transfer of the natural gas and electric distribution systems owned by Tombstone. The Arizona Public Service Company intervened and, after trial, judgment was entered in favor of the City, the Mayor and Common Council and intervener Arizona Public Service.

On appeal, the cause was sent for disposition to the Court of Appeals, Division Two, which rendered its decision on the 12th day of May, 1965, affirming the trial court. 1 Ariz.App. 268, 401 P.2d 753. We granted review pursuant to A.R.S. § 12–120.24, considering that the question as to whether the sale of the two systems as one unit was calculated to stifle competition merited the interposition of this Court.

· Tombstone, a city of 1,283 population, has in the past owned and operated distribution systems by which means it provided its inhabitants with both gas and electricity. In 1960, Tombstone invited Arizona Public Service to study the possibility of a purchase of the utilities in question and thereafter, in 1961, Tombstone solicited proposals for sale. Arizona Public Service made a single offer to purchase both systems for cash, plus the value of materials and supplies on hand. Thereafter, the City retained an independent consulting engineer for the purpose of evaluating its utilities in the light of Arizona Public Service's offer. After receiving the engineering report, the City Council voted to proceed with the sale. The City invited bids for the purchase of the property as provided by A.R.S. §§ 9–402 and 39–204, posting and publishing the invitations for bids, offering to sell both the gas and electric systems together as one unit. Arizona Public Service submitted a bid on approximately the same terms as the previous offer. One other bid was received which was not accepted as the Arizona Public Service bid was more advantageous to the City. Sulphur Springs did not submit a bid for the reason that it engages only in the sale of electricity and not of gas. The City Council tentatively voted to accept the bid of Arizona Public Service pending approval of the people of the City of Tombstone at an election. This approval was obtained on November 14, 1961, in which the vote was 261 to 159 in favor of the sale.

In considering the problem here, we note that counsel have been unable to refer this

Court to any precedent or authority holding that the sale in combination of two utilities tends to stifle competition but we think certain principles of law are plainly applicable and upon these principles the decision is rested.

Appellants have urged upon us a line of Arizona cases from which the general rule is derived that when a public body is required to have competitive bidding by statute the conditions of the bid must be of such a nature as to invite competition between all persons equally qualified to bid. See e.g. Berryhill Office Equipment Co. v. Phillips, 35 Ariz. 180, 276 P. 4; Prescott Courier, Inc. v. Moore, 35 Ariz. 26, 274 P. 163; Gamewell Company v. City of Phoenix, 9 Cir., 216 F.2d 928. We have no doubt but that the rule urged is correct. Appellant argues from this that the failure to request proposals for the sale of the utilities singly tended to stifle the competitive bidding for the reason that if Sulphur Springs had submitted a bid for the electric system, it might conceivably have been greater than the total bid of Arizona Public Service for both systems, and conceivably it could have.

However, we think the controlling principle applicable here to a sale by a public body is enunciated in our decision of Williams v. Greene, 95 Ariz. 378, 390 P.2d 907. There, Williams and Greene each made an application for a commercial lease on a parcel of state lands containing 491.20 acres. Greene sought to lease the entire 491.20 acres. Williams sought to lease only 125.42 acres of the parcel. The State Land Commissioner, after a hearing, ruled that Greene, the prior lessee, had a preference by law and directed that the entire 491.20 acres be leased to him. On appeal to the superior court, the decision of the Commissioner was affirmed, but we reversed, holding that the best interests of the state were not considered by the Commissioner in basing his order upon the preference right of Greene. We said that the primary consideration was the benefits to be received by the state and the people of this state.

In applying the principle of Williams v. Greene in support of the judgment of the court below, we take those facts and inferences supported by the evidence favorable to appellees. Odom v. The First National Bank of Arizona, 85 Ariz. 238, 336 P.2d 141. It is clear that Arizona Public Service would not have bid on the gas system alone as the management did not consider it would be, because of its size, an economical operation. An independent consulting engineer advised the City that it should not sell the properties separately. Testimony introduced at the trial was to the effect that in a small town joint operation of utilities was desirable from the standpoint of savings because of joint meter reading, billing, management and use of other employees, such as clerks. Testimony

also supports the conclusion that the best offer would be received if the utilities were sold as a single unit. In addition, there was evidence that the offer of Arizona Public Service was reasonable, if anything "on the high side." The trial court could have concluded that the sale of the two systems as a single unit was advantageous and beneficial to the City and its people.

 Unquestionably, there is an area of discretion lodged in city officials in carrying out transactions for the benefit of the City and its inhabitants. In the absence of fraud or bad faith, the validity of their actions will not be entertained by courts. 3 McQuillan, Mun. Corp. § 12.126, p. 526. In Bassett v. Mayor and Board of Com'rs of Borough of Wildwood Crest, 122 N.J.L. 250, 4 A.2d 393, the New Jersey Supreme Court had this to say where a tract of land was sold as one parcel and not as individual lots:

> "The grouping of the lots for sale was a question of policy within the discretion of the governing body. We are unable to say on the evidence before us that the discretion was abused or that the proceeds of the sale would likely have been greater had the sale been of individual lots and not in bulk." 122 N.J.L. 250, 252, 4 A.2d 393, 394.

Similarly, here we are unable to say that the Mayor and Council of the City of Tombstone did not act to the City's benefit or that it abused its discretion in offering for sale and in selling the utilities as a single unit.

The judgment is affirmed.

LOCKWOOD, C. J., and BERNSTEIN, UDALL and McFARLAND, JJ., concur.