JESSE E. RANKIN, RESPONDENT, v. BOARD OF EDUCA-
TION OF EGG HARBOR TOWNSHIP AND MELISSA H.
ADAMS, PROSECUTORS-APPELLANTS.

Argued October 17, 1946—Decided February 6, 1947.

For the prosecutors-appellants, *William Charlton.*

For the respondent. *Louis D. Champion.*

The opinion of the court was delivered by

McLEAN, J. This appeal brings before the court for re-
view the judgment of the Supreme Court dismissing a writ
of *certiorari* and affirming the order of the State Board of
Education setting aside the award of a contract to the appel-
lant Melissa H. Adams, by the appellant Board of Education
of Egg Harbor Township.

Three successive requests for bids were issued by the appel-
lant Board of Education for the transportation of pupils.

Bids were received on May 14th, 1945, June 7th, 1945, and July 17th, 1945. Each time the bid of respondent Jesse E. Rankin was $900 or better below that of appellant Melissa H. Adams. Appellant Melissa H. Adams was the sister-in-law of the chairman of the transportation committee of the Board. After appellant had been underbid twice and all bids had been rejected, the specifications were revised for the bidding of July 17th. Requirements were added in excess of the specifications prescribed by the State Board which made competition difficult, if not impossible. The Township Board also required, in advance of awarding the contract, the physical production before it, of the bus proposed to be used, and it appears that under the conditions prevailing it was impractical if not impossible for any one other than appellant to meet this requirement. On July 17th there were two bids. The bid of respondent Jesse E. Rankin was rejected and the contract was awarded to appellant Melissa H. Adams. Both bids were in precisely the same form recommended by the State Board of Education. They were in the same terms except that the bid of Mr. Rankin was for $5,500 and the bid of Mrs. Adams was for $6,421.60. Each bidder enclosed cash or a certified check for five (5%) per centum of the amount of the total bid and each stated in the same language "if I am awarded the bid, I agree to furnish a bus to meet your approval and that of the County Superintendent of Schools and to comply with all the rules and regulations of the State Board of Education relating to pupil transportation." The only pertinent deviation, except for the amount of the bid, was the fact that Mrs. Adams exhibited physically to the local Board a bus containing details of body specifications which the Board had inserted in the specifications, while respondent, Rankin, because of priority governmental regulations which were entirely beyond his control, was unable to get another bus to match these requirements in advance of being awarded the contract. But he did produce a bus which actually complied with all the specifications prescribed by the State Board.

Three grounds of appeal are argued: (1) That the State Board lacked authority to conclude the Board of Education

by rules and regulations concerning pupil transportation and the type and specification of bus to be used therefor. (2) That the local Board of Education had the power to enlarge any rule, regulation or specification imposed by the State Board. (3) That no legal proof was established to show any corrupt influence or interest in the award of the contract.

There is no merit in the argument that the State Board lacked authority. The powers of that Board are very broad. (*R. S.* 18:2-4.) The statute was designed to give that Board general supervision and control of the public instruction. Specific authority is given in matters of pupil transportation. County superintendents in the distribution of state funds to school districts are authorized to pay 75% of the cost of transportation of pupils when the necessity for such transportation, the cost and method thereof have his approval. (18:10-41P.) Such approval is subject to appeal to the State Board. The State Board prescribes the amount of liability insurance to be carried by the contractor or bus driver as well as other rules and regulations applicable to pupil transportation (*R. S.* 18:14-12) and no contract for the transportation of pupils shall be made unless each bid shall be accompanied by information required on a standard form of questionnaire approved by the State Board (*R. S.* 18:14-11). The power and authority of the State Board of Education to supervise and control the transportation of pupils including the method of transportation and type of vehicle is not open to question.

We disagree with appellants that the local Board had the power to enlarge any rule, regulation or specification imposed by the State Board. It is the prerogative of the local board to contract for the needed facilities for pupil transportation (18:14-10), but its contracts are subject to the supervision of the State Board under the statutes cited and must be awarded in conformity with the policy underlying the law to encourage competitive bidding.

"The purpose of the law obviously is to secure economy, to prevent fraud, favoritism and extravagance, so that all bidders will be on the same basis in matters material to the proposed municipal action. The rule is one which is rooted

deep in sound principles in public policy of general application. It should be rigidly adhered to by the courts and not frittered away by a careless or indifferent application to specifications that are not clear, precise and definite on all matters that are material to the proposals, to which bidders are invited to compete. The necessity of having a common standard and the importance of definite and precise specifications upon which to found corporate action are too apparent to require argument." *Tice* v. *Long Branch, 98 N. J. L. 214.*

The State Board of Education pursuant to express statutory authority has adopted rules respecting proper transportation of pupils. These rules have been in effect since 1937. They contain twenty-one categories of requirements determined by the Board to be necessary and adequate for the protection of the transportation of pupils to and from schools throughout the state. It has prescribed uniform specifications, bid forms, newspaper advertisement and all the procedural details to be used by local boards to establish a common standard within the object and purpose of the law, to encourage competitive bidding. These rules are not designed to be all inclusive and local boards are permitted to make variations from the language of the specifications prescribed, but such variations must be reasonable and within the purview of the law, and are subject to review by the State Board.

In the instant case, the State Board found that the added requirements of the Local Egg Harbor Board in excess of the specifications prescribed by the State Board were entirely unreasonable and made it difficult if not impossible, for there to be any competition in bidding under these excess requirements. Respondent, Rankin, was the lowest bidder on two prior occasions, May 14th and June 7th. Appellant Adams was his only competitor. Rankin was ready, able and willing to perform the contract if awarded to him but all bids were rejected and after the meeting of June 7th the specifications were revised and new bids invited for a meeting on July 17th. The revised specifications contained the unreasonable requirements which the State Board condemned. They required the bidder to furnish a new Superior, all steel custom deluxe, riveted and welded body; to display the bus he proposed to

use to the Board of Education and the county superintendent before the bids were opened; to include in his bid the serial number of the engine and the body of the bus; furnish a cashier's check or a certified check for five (5%) per centum of the contract with his bid; furnish the name of the driver to be employed who must have had at least one year of experience in operating a school bus. There was only one such bus available and that was in the control of Mrs. Adams. Rankin was disqualified by not having had one year of experience as the operator of a school bus, notwithstanding his twenty years experience driving pleasure cars and trucks. It is obvious how many obstacles he had to surmount in this third competition. Nevertheless, he did bid to perform the contract in accordance with requirements of the State Board. His bid was $5,300. It was rejected because of his failure to comply with the specifications. The contract was awarded to Mrs. Adams on her bid of $6,421.60, a difference of $1,121.60 above the Rankin bid. The Commissioner of Education sustained the local Board. The State Board reversed the action of the Commissioner on the ground that the local Board had exceeded its authority with respect to the specifications prescribed. We concur in the determination of the State Board.

It is unnecessary to consider the third ground of appellants that no legal proof was established to show corrupt influence or interest in the award of the contract, but the atmosphere of this case prompts us to direct attention to the integrity demanded of those who accept responsibility as public officials. It cannot be too often restated. The administration of government ought to be directed for the good of those who confer and not of those who receive the trust. The officers of government are trustees and both the trust and trustees are created for the benefit of the people.

"It is an inexorable rule of common law, and it finds expression in our statute, that public servants shall not be interested, directly or indirectly, in any contract made with public agencies of which they are members. Public service demands an exclusive fidelity. The law tolerates no mingling of self-interest." *Ames* v. *Board of Education of Montclair et al.*, 97 *N. J. Eq.* 60, Backes, V. C.

And Mr. Justice Trenchard in setting aside a resolution for the purchase of property from the wife of a member of a borough council, said:

"We may remark that the invalidity of such a contract in no way rests upon a criminal intent of the member of the council. The rule is one of policy which without regard to intention inexorably reaches all contracts which contravene the purpose of the law." *Sturr* v. *Borough of Elmer*, 75 *N. J. L.* 703.

See, also, *R. S.* 2:160–8; *R. S.* 18:12–3. *Gregory* v. *Jersey City*, 34 *N. J. L.* 390; *Stroud* v. *Consumers Water Co.*, 56 *Id.* 422; *West Jersey Traction Co.* v. *Camden*, 56 *Id.* 431; *Foster* v. *Cape May*, 60 *Id.* 78; *Drake* v. *Elizabeth*, 69 *Id.* 190; *Harrison* v. *Elizabeth*, 70 *Id.* 591.

The judgment of the Supreme Court will be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, PARKER, DONGES, HEHER, COLIE, EASTWOOD, WELLS, RAFFERTY, DILL, FREUND, McGEEHAN, McLEAN, JJ. 13.

*For reversal*—None.