FEREDAY & MEYER CO., INC., A NEW JERSEY CORPORATION, AND SAMUEL SCHAPIRO, A TAXPAYER OF THE CITY OF ELIZABETH, NEW JERSEY, PLAINTIFFS-APPELLANTS, v. BOARD OF PUBLIC WORKS OF THE CITY OF ELIZABETH, NEW JERSEY, *ET AL.*, DEFENDANTS-RESPONDENTS.

Argued May 6, 1958—Decided June 2, 1958.

*Mr. John E. Toolan* argued the cause for the appellants (*Messrs. Toolan, Haney & Romond,* attorneys).

*Mr. Raymond A. Leahy* argued the cause for the municipal defendants-respondents.

*Mr. Samuel A. Larner* argued the cause for defendants-respondents Peter Roselle *et al.,* t/a Peter Roselle & Sons (*Messrs. Budd, Larner & Kent,* attorneys).

The opinion of the court was delivered by

JACOBS, J.   The plaintiffs appealed to the Appellate Division from the summary judgment which the Law Division had entered in favor of the defendants.   We granted certification under *R. R.* 1:10–1(*a*).

The plaintiff Fereday & Meyer Co., Inc. was engaged in the scavenger business and since 1939 performed garbage collection services for the City of Elizabeth under a series of contracts.   Most of the contracts had been executed pursuant to bids on specifications which required that the contractor maintain dumping grounds within the city or within five miles of the city, and the fact that Fereday's grounds were within the corporate limits of Elizabeth placed it in a favorable bidding position.   Throughout the years it was the successful bidder and on two occasions it was the only bidder.   Its original three-year contract from 1939 to 1942 provided for aggregate payments of $183,000 for garbage collection in the city;   each of its subsequent contracts was at a higher rate, and its last contract from January 1, 1955 to January 1, 1958 provided for aggregate payments of $1,215,000.

In September 1957 the Elizabeth board of public works, which is charged with the responsibility for collecting and removing garbage within the city (*R. S.* 40:175–23), advertised for bids on specifications which did not require that the contractor maintain dumping grounds within Elizabeth or any specified distance therefrom, although it did contain a customary provision that the contractor would at its own expense furnish dumping grounds on which the city might dump its municipal refuse, trees, street sweepings, debris, garbage, rubbish and other waste matter.   Bids were submitted by Fereday, Roselle & Sons, and a third bidder. Roselle's bid was the lowest, but the board of public works, on recommendation of the Elizabeth City Council, rejected all bids as being too high, and advertised for further bids. This time bids were submitted only by Fereday and Roselle and their bids were substantially lower than their earlier bids.   Roselle's bid for a three-year term was $1,245,000,

whereas Fereday's bid for the same period was the sum of
$1,347,000. In addition, the specifications called for a
supplemental bid of the amount which would be charged by
the contractor for sanitary fill if required under the new
regulation known as chapter VIII of the State Sanitary
Code, to be effective July 1, 1958; on this item Roselle's
charge was $2,333 per month whereas Fereday's charge was
$3,333 per month. On December 2, 1957 the board of
public works accepted Roselle's bid, and on January 2, 1958
a written three-year garbage collection contract was executed
between Roselle and the city in which the city agreed to
pay the sum of $1,245,000 in monthly installments and in
addition the sum of $2,333 per month if, at any time during
the contract, chapter VIII of the State Sanitary Code is
put into effect. See *L*. 1958, *c*. 38.

The plaintiffs filed a complaint in which they attacked the
action of the board of public works on various grounds which
were rejected by Judge Hetfield in the Law Division. In
support of their appeal from the adverse summary judgment
the plaintiffs have in this court advanced three points which
we find to be without legal merit. Their first point is that
"the Board of Public Works violated the law of the State
of New Jersey when it refused to award the garbage contract
to Fereday & Meyer Co., Inc., the lowest responsible bidder,
*R. S.* 40:50–1." No question is raised as to the responsi-
bility of Roselle nor is there any dispute that on the face
of the bids Roselle was the lower bidder by a substantial
amount. However, the plaintiffs contend that since Roselle's
dumping grounds are located in Kearny, about 7½ miles
from Elizabeth, the cost to the city for dumping its own
street sweepings and other waste material will exceed what
its cost would be if Fereday's dumping grounds within
Elizabeth were available, as they would be on acceptance
of Fereday's bid. An affidavit by the vice-president of
Fereday calculates the cost to the city, on this item over
the three-year period, in the sum of $207,251 which he arrives
at through the following estimations: It will take a city
sanitation truck carrying a driver and two helpers approxi-

mately 1½ hours to make a round trip to Kearny; during 1956 the municipal trucks carried 6,874 loads and if they carry as many loads annually during the contract period 1958 through 1960, the cost will be $176,318; and to this figure the affiant adds an operating cost of ten cents per mile for the trucks, amounting to $30,933 for the three-year period. The affidavit significantly omits all reference to the relative cost of carrying loads in the municipal trucks to Fereday's dumping grounds. And the basic assumptions upon which it rests are highly questionable for there is nothing to indicate that the number of loads, the number of men used, and the operating costs, will be at all comparable to the alleged 1956 experience. Indeed, the city's contract with Roselle simply allows it to use Roselle's dumping grounds, and counsel for the municipal defendants indicated during oral argument that in the interests of further economy the city was considering its own acquisition of local land for the dumping of municipal street sweepings and waste materials. See *R. S.* 40:60–2.

*R. S.* 40:50–1 provides that no municipality shall enter into any contract for the doing of work or the furnishing of materials or labor where the sum exceeds $2,500, without advertising for bids and awarding the contract "to the lowest responsible bidder." The statutory requirement of competitive bidding seeks to prevent dishonesty without throttling "the exercise of an honest judgment within prescribed limits." *Hammonton v. Elvins,* 101 *N. J. L.* 38, 41 *(Sup. Ct.* 1925); *Rankin v. Board of Education of Egg Harbor Twp.,* 134 *N. J. L.* 342, 344 *(Sup. Ct.* 1946), affirmed 135 *N. J. L.* 299 *(E. & A.* 1947). Economy is to be secured and "fraud, favoritism and extravagance" are to be prevented, "to the end that all bidders will be on the same basis in matters material to the proposed municipal action." *Waszen v. City of Atlantic City,* 1 *N. J.* 272, 283 (1949). The specifications must set up a common standard of competition and must "supply such information as will afford all bidders a fair and reasonable opportunity for competition and enable them to bid intelligently." *Camden Plaza Parking v. City*

*of Camden,* 16 *N. J.* 150, 159 (1954). Here the specifications simply stated that the contractor shall furnish dumping grounds at which the city may dump its street sweepings and waste materials and said nothing about the condition and location of the dumping grounds, but since no one has questioned the specifications we assume their propriety. Similarly no one has questioned the good faith of the officials in seeking to encourage competitive bidding through the elimination of the requirement, that the dumping grounds for the city's use be within Elizabeth or within five miles of the city limits. The bids of Fereday and Roselle were in full compliance with the specifications and the figures submitted by Roselle were below those submitted by Fereday. The municipal officials were aware that Roselle's dumping grounds were in Kearny whereas Fereday's dumping grounds were within the city limits, but in the light of the substantial difference in the bids, the justifiable omission from the specifications of any requirement that the dumping grounds be within the city limits, and the other persuasive circumstances, they readily determined that Roselle's bid should be accepted as the lowest within the contemplation of *R. S.* 40:50–1. Nothing in the record before us indicates that they did not act fairly, reasonably, and within their statutory power, and we find no present occasion for judicial intervention. *Cf. Frank Stamato & Co. v. City of New Brunswick,* 20 *N. J. Super.* 340, 344–45 (*App. Div.* 1952) ; 10 *McQuillin, Municipal Corporations* §§ 29.72, 29.83 (*3d ed.* 1950).

■■ The second point advanced by the plaintiffs is that the Board of Public Works breached its fiduciary obligation when it refused to accept Fereday's offer to renew its "existing garbage collection contract pursuant to the provisions of *R. S.* 40:63–47." After Fereday had twice submitted bids under *R. S.* 40:50–1 *et seq.* and had on both occasions been substantially underbid by Roselle, it offered to renew its contract for an additional term of one to five years from January 1, 1958. If the board had accepted the offer it would have nullified all of the previous bidding and would have effectively discouraged bidding in later years. Further-

more, we find that *R. S.* 40:63–47, which is relied upon by Fereday as furnishing the authority for renewal of its contract, is not applicable. That statutory provision (now found in the *Revised Statutes* under the caption "Sewers, Drains and Disposal Plants"—*R. S.* 40:63–47) had its origin in *chapter* 53 of the *Laws of* 1917 which dealt with the construction and operation of sewage disposal work or works through contracts not exceeding ten years (*R. S.* 40:63–43), with power in the municipal governing bodies to renew contracts "for the purpose of furnishing such work or works" for periods not exceeding five years. *R. S.* 40:63–47. In 1917 the Legislature also passed *chapter* 152 of the *Laws of* 1917 (the pertinent part is now found in the *Revised Statutes* under the caption "Street Cleaning and Disposal of Refuse"—*R. S.* 40:66–4), which provided that the municipal governing body could, only upon competitive bidding (see *R. S.* 40:50–1 *et seq.*), enter into a garbage removal and disposal contract. A fair construction of the foregoing enactments leads to the conclusion that the ordinary garbage removal and disposal contract, such as the one involved here, may be entered into by a municipality only upon competitive bidding under *R. S.* 40:50–1 *et seq.* (see *R. S.* 40:66–4), and this is buttressed by municipal practices which have long called for competitive bidding on all such contracts.

█ The third and final point advanced by the plaintiffs is that the award of the contract to Roselle was improper because "the City of Elizabeth had not appropriated a sufficient sum of money to cover the cost of the contract for the year 1958." They do not question the three-year term of the contract and they acknowledge that the 1958 appropriation is sufficient if it meets "the requirements of the contract for the first year." See *Viracola v. Long Branch,* 1 *N. J. Misc.* 200 (*Sup. Ct.* 1923); *DeBow v. Lakewood Township,* 131 *N. J. L.* 291 (*Sup. Ct.* 1944). But they contend that under *R. S.* 40:2–29 (see also *R. S.* 40:50–6) it was necessary that the city council make the full appropriation for the first year before the contract was executed

on January 2, 1958. This contention would seem to disregard the practical necessities of municipal governmental operations, as well as the language in *R. S.* 40:2–29 to the effect that no contract shall be executed when it involves the expenditure of money for which no appropriation is provided in the budget "or by temporary appropriation pursuant to section 40:2–12." *R. S.* 40:2–12 sets forth that if any contract is to be made before the adoption of the annual budget, the governing body shall, no earlier than January 1 but not later than January 30, make a temporary appropriation to provide "for the period between the beginning of the budget year and the adoption of the budget." In accordance with its customary practice the city council on January 1, 1958 adopted a temporary budget which contained a line item reading "Garbage and trash removal $101,250.00"; this sum was one-fourth of the 1957 appropriation and presumably satisfied the terms of *R. S.* 40:2–12. On April 9, 1958 the city council adopted its municipal budget for 1958 which contained a line item reading "Garbage and trash removal—$415,000.00"; this met the commitment for the first year under the Roselle contract exclusive of sanitary fill which is not yet called for and may perhaps not be required at all during 1958. See *L.* 1958, *c.* 38. In the light of all of the foregoing, we find the plaintiffs' attack on the city's appropriation procedure to be without substantial basis and consider it unnecessary to pass on the additional grounds which the respondents have urged in its defense.

Affirmed.

*For affirmance*—Chief Justice WEINTRAUB, and Justices HEHER, WACHENFELD, BURLING, JACOBS, FRANCIS and PROCTOR—7.

*For reversal*—None.